## TAYLOR v. THE STATE.

1. The inclusion of a juror within the panel of forty-eight who is ineligible to serve at a particular term of court does not vitiate the entire panel. The juror's disqualification is good cause of challenge to the poll, but not to the entire array.
2. It is not necessary to administer the oath prescribed for jurors in civil cases (Penal Code, § 856) to the jury empaneled to try criminal cases. The oath prescribed in the Penal Code, § 979, is the only oath designed for jurors in criminal cases.
3. Declarations by the deceased, of peaceful intent, communicated to the defendant, are admissible in rebuttal of evidence of previous threats made by the deceased against the defendant.
4. The evidence excluded by the court was inadmissible, and was properly rejected.
5. The interest of a witness and his bias or freedom from prejudice may always be inquired into ; and the testimony objected to was admissible in rebuttal of the testimony of the defendant's witnesses.
6. In his discretion the trial judge may allow a leading question, and a new

trial will not be granted solely because a leading question was permitted, unless it appears that the court's discretion has been abused.

7. It is not objectionable for counsel to embellish the argument with figurative speech, provided prejudicial facts extrinsic of the record are not introduced. Neither the remarks of the solicitor nor of the court offended the proprieties of a legal trial.

8. As stated by the court, the contentions comprehended the defense as presented both by the evidence and the defendant's statement. If a more elaborate presentation was desired, a timely written request should have been made.

9. The charge of the court on the subject of threats was appropriate and correct.

10. The judge is not bound to read the Penal Code, § 76, to the jury where the general charge sufficiently presents justifiable homicide as a substantive defense.

11. The charge of the court on justifiable homicide was not too narrow or restricted, and is not open to the criticism made against it.

12. The verdict is amply supported by the evidence and has the approval of the trial judge, and no reason is shown for disturbing it.

Argued November 21, — Decided December 9, 1904.

Indictment for murder.  Before Judge Daley.  Washington superior court.  October 1, 1904.

*James K. Hines, Gus. H. Howard, T. W. Hardwick,* and *J. E. Hyman,* for plaintiff in error.

*John C. Hart, attorney-general, B. T. Rawlings, solicitor-general, W. E. Armistead,* and *Evans & Evans,* contra.

EVANS, J.   C. T. Taylor was indicted and tried for the crime of murder.   The testimony disclosed that the deceased, W. R. Veal, and the defendant were bitter enemies, and that, for a period of about three months prior to the homicide, each was anticipating and was prepared for a deadly encounter.   On the day of the homicide, Veal, while riding along a public road in a buggy with a negro driver, was stopped by another negro who had been working for him and who asked that he might see him on a matter of business.   Veal got out of his buggy and went a short distance out on the side of the road, stopping by an embankment at or near a fence corner.   The negro driver remained in the buggy to hold the horse.   While conversing with the negro who had called him to this place on the roadside, and while engaged in tying one of his shoes, Veal was approached by another negro in his employment, who was coming down the road, followed by the defendant.   The defendant, when first seen by Veal and the negro

with whom he was talking, had his pistol in his hand; and when he arrived within a few feet of Veal, he without any warning fired upon him, inflicting a wound in his side, under one arm. At the time, Veal was sitting on the ground, tying his shoe, and was not aware until that moment of the presence of the defendant. After receiving this wound, Veal threw up his hands, quickly rose to his feet, and, apparently realizing his helplessness, started to run. As he was running away, the defendant fired three shots at him, each of which took effect in his back, and he fell to the ground. There was testimony that, shortly after the shooting, a pistol was found on the ground near the body of deceased; but the eye-witnesses to the homicide swore that neither before nor after the first shot did he make any effort to draw the weapon as a measure of offense or defense. The defendant introduced testimony disclosing that the deceased had previously made repeated threats to kill him on sight, which threats had been communicated to him; that the deceased habitually carried with him a Mauser rifle, and had it in his buggy on this occasion; and that he had stated to a number of people that he had procured this rifle for the express purpose of killing the defendant with it when they next met. The defendant also sought to prove his contention, that the purpose of the deceased in leaving his buggy and going to one side of the road, where he was partially concealed from view by the embankment, because of a curve in the road, was to waylay the defendant and carry out these threats; that defendant, while walking along the road, suddenly and unexpectedly came upon the deceased, who immediately threw his hand to his pocket and attempted to draw his pistol; and that, realizing his imminent peril, the defendant thereupon fired four shots at him in quick succession. The defendant also made an attempt to impeach the witnesses for the State upon whose testimony it mainly relied for a conviction. The jury returned a verdict of guilty, and the defendant made a motion for a new trial, to the overruling of which he excepts and brings the case here for review.

1. When the panel of forty-eight jurors was put upon the defendant, he urged, as cause of challenge to the array, that one of the jurors included in the panel had served as a traverse juror at the preceding term of the court, and was therefore disqualified to

serve at the then present term, and that for this reason the panel was illegal. The court overruled this challenge to the array, and the defendant excepted pendente lite. The inclusion of a juror within the panel of forty-eight who is ineligible to serve at a particular term of the court does not vitiate the entire panel. The juror's disqualification is good cause of challenge to the poll, but not to the entire array. See *Thompson* v. *State*, 109 *Ga.* 272, and cit. See also Acts 1903, p. 83.

2. The first and second ground of the amendment to the motion for a new trial set forth the complaint that the oath prescribed in the Penal Code, § 856, was not administered to the entire panel of forty-eight jurors put upon the defendant. It appears that thirty-six of the jurors included in that panel were jurors who had been regularly drawn and who had taken the oath just referred to. Upon the opening of the court this oath was administered to all of the jurors who had been summoned to serve during that term of the court. As the defendant was entitled to a panel of forty-eight jurors, other jurors were summoned and added to the number originally summoned, in accordance with the statute providing for completing a panel to try felony cases. The oath prescribed in the above-cited section of the Penal Code should be administered only to jurors called on to serve in civil cases. Originally this was the oath prescribed for special juries selected from the grand jury. Code of 1868, §§ 3854, 3855. The act of 1869 provided for the taking of this same oath by petit juries summoned for service in civil cases during a term of court. Acts of 1869, p. 145. The provisions of this act appear, in their appropriate place, in the Code of 1882, §§ 3932, 3933. In criminal cases the oath to be taken by the jury was that prescribed in section 4650 of that code, and this oath had to be administered in each case. It was never contemplated that both oaths should be administered to jurors trying criminal cases. On the contrary, provision was made that, in civil cases, the taking of a prescribed oath applicable to that class of cases, at the beginning of the term, should suffice to render the jury competent to try all cases of that class coming on for trial before the jury at that term of court; but, in criminal cases, the accused was given the safeguard of having a specially prescribed oath, applicable to that class of cases, administered in each and

every case the jury was called on to try. This oath now appears in the Penal Code, § 979. The codifiers included therein all the law on the subject of impaneling juries and administering to them the different oaths prescribed by statute. This was done simply for convenience, as appears from the Civil Code, § 4452; and was not intended to change the law as it had previously stood.

3. Objection was made to the admissibility of certain statements made to third persons by the deceased, which were communicated to the defendant. The purport of these statements was that the deceased intended no harm to the defendant. The record shows that for some months prior to the homicide there was a feud existing between the defendant and deceased; that the deceased had made threats against the life of the defendant, and that these threats were communicated to the defendant. The defense was that the homicide was justifiable, and an important element of that defense was that at the time of the homicide the defendant was acting under the fears of a reasonable man that the deceased intended to carry into effect his previous threats. Threats illustrated the state of mind of the defendant when he slew the deceased. These pacific messages from deceased to defendant were admissible as qualifying his other declarations. The defendant sought to justify his conduct in a measure by proving the threats of the deceased, and any declaration of peaceful intent, subsequent to the threats of which the defendant was informed, should have gone to the jury to enable them to pass upon the conduct of the defendant at the time of the homicide and determine the good faith of his defense that he was influenced by the fears of a reasonable man that the deceased was about to carry into effect his previous threats. The testimony was not objectionable as being hearsay, nor because what the deceased had said to the witnesses amounted to nothing more than self-serving declarations on his part. It was competent for the State, in rebuttal of the defendant's evidence as to threats, to introduce this testimony with a view to illustrating the quo animo of the defendant in killing the deceased under the circumstances developed on the trial of the case. In this connection, see Naugher *v.* State, 105 Ala. 26; Trumble *v.* State, 25 Tex. App. 631; Miller *v.* State, 27 Tex. App. 63; Bowlus *v.* State, 130 Ind. 227.

4. The court excluded evidence of an antecedent declaration of the defendant, to the effect that he had declined to do certain work on a house located on the edge of a public road, because he was afraid the deceased might kill him while he was there working. This testimony was properly excluded. A self-serving declaration of a defendant is inadmissible. Whart. Cr. Ev. § 268; *Monroe* v. *State*, 5 *Ga.* 132. Complaint is further made that the court refused to allow counsel for the defendant to ask a witness for the State the terms of his employment by the deceased at the time of the homicide. The witness had testified he was a servant of the deceased and in his employ at that time. The terms of the employment were wholly irrelevant and could have shed no light on any issue in the case. Exception is also taken to the refusal of the court to allow a witness to answer the question whether he would believe a certain witness for the State on oath. The general character of the witness sought to be impeached was not known to the witness offered to impeach him, and the court properly declined to permit the question to be answered, the necessary foundation for it not having been laid. Civil Code, § 5293.

5. The defendant offered the testimony of one Giles and his four sons. They testified that they were not interested in the case. In rebuttal of their avowal of want of interest and freedom from bias or prejudice, the State offered evidence to show that one of the Gileses was shot by a relative of the deceased some time previous to the homicide, and that the feeling of the Giles family against the Veals had been bad. Exception is taken to the admission of this evidence, on the ground that it was irrelevant. The interest of a witness and his bias or freedom from prejudice may always be inquired into; and the testimony objected to was admissible in rebuttal of the testimony of the Messrs. Giles, that there were no ill feelings on their part towards any member of the Veal family.

6. The court, over the defendant's objection, permitted the solicitor to ask a witness if the deceased was running or walking at the time he was shot. The objection was that the question was leading. In that it assumed that deceased was either walking or running at the time he was fired upon, the question was leading; but the court may, in its discretion, allow a leading question to be propounded. A new trial will not be granted solely

because the court permitted the solicitor-general to ask a witness a leading question.

7. The solicitor, in his concluding argument to the jury, used the following language: "On the happening of this occurrence, the whole community ran together like the gathering of a great storm, to investigate the truth of it." When this remark was made by the solicitor, counsel for the defendant objected to the same, on the ground that it was based on nothing contained in the record, and as being prejudicial to the accused, and asked the court to rebuke the solicitor-general and instruct the jury to disregard this remark. The court replied: "I don't understand that he contends that it is in the record. He is only drawing an illustration as to how murder cases will excite public sentiment and create excitement. I overrule the objection." Error is assigned on this ruling, as well as upon the use by the court of the language quoted. The record discloses that immediately after the homicide, several people in the neighborhood were attracted to the scene of the tragedy; and the solicitor doubtless had this circumstance in mind when he made the remark complained of. Nothing in the remark could have been hurtful to the defendant. It is quite natural, and by no means unusual, for an advocate, in discussing the facts of a case before a jury, to indulge to some extent in imagery and illustration. Sometimes a simile may be inapt, or the metaphor mixed, or the expression may be hyperbolical. What the law forbids is the introduction into a case, by way of argument, of facts not in the record and calculated to prejudice the accused. The language of the solicitor was somewhat extravagant; but figurative speech has always been regarded as a legitimate weapon in forensic warfare, if there be evidence before the jury on which it may be founded. The language employed by the court in ruling upon the defendant's objection to the solicitor's remark is not open to the criticism made upon it. The court interpreted the solicitor's remark as illustrating how, in murder cases, public sentiment is aroused and some interest and excitement created. The characterization of instances of homicide as "murder cases" can not be construed as an expression by the court of any opinion as the guilt of the accused. When a person is charged with the crime of murder, the case against him is, even prior to his conviction, commonly alluded to in ordi-

nary conversation as a "murder case." The jury doubtless understood the reference to be to cases where murder was charged and public interest was excited to a greater or less extent, and there is no reason to apprehend that the jury drew the unwarranted inference that it was the purpose to the court to express an opinion that the accused, in killing the deceased, had committed the crime of murder.

8. There is no merit in the complaint that the defendant's contentions were not accurately summed up by the court. As stated by the court, the contentions comprehended the defense as presented both by the evidence and the defendant's statement. If the defendant desired a more elaborate presentation of his contentions, he should have submitted a timely written request embodying a summary of his contentions as presented by the evidence and his statement

9. The next assignment of error is upon the following charge of the court: "I charge you that threats alone will not justify a killing, but such threats may be considered by the jury in connection with any overt act of the deceased at the time of the killing, in passing upon the question of reasonable fears. Did the deceased at that time do anything which justified the defendant in believing he then intended to carry out his previous threats? And were such acts sufficient to excite the fears of a reasonable man, one reasonably courageous, reasonably self-possessed, and not those of a coward or one seeking an opportunity or an excuse for the killing?" This charge is assailed on the ground that it incorrectly stated the law and was a limitation on the right of self-defense. It can not be the law that mere verbal threats alone will justify a homicide. To maintain such a doctrine would be absurd. The charge of the court was in line with the principle announced in the *Cumming* case, 99 *Ga.* 662, 664, that there must be something more than mere threats; there "must be an appearance of imminent danger;" the "means of inflicting the threatened injury must apparently be at hand, and there must be some manifestation of an intention to inflict the injury presently." The charge of the court laid down no different standard from that prescribed in the *Cumming* case; neither was it a limitation in any way on the defendant's plea of self-defense. The court, in charging upon the law with reference to threats, was not under-

taking to charge the jury as to the law on the subject of justifiable homicide. The judge did that in another portion of his charge. The charge excepted to dealt only with the effect of a mere verbal threat, and the court correctly stated the law with respect there.

10. Another assignment of error was on the failure of the court to give in charge the following provision of the Penal Code, § 76 : " The homicide appearing to be justifiable, the person indicted shall, upon the trial, be fully acquitted and discharged." The homicide was admitted ; the evidence and the statement of the accused presented the clear-cut issue of murder or justifiable homicide. The court charged the jury on the subject of murder and justifiable homicide, and instructed them to " apply the evidence to the law [given] in charge in defining murder and justifiable homicide, and say by [their] verdict, after giving the benefit of any reasonable doubt " resting in their " mind to the defendant, whether or not he [was] guilty of the crime with which he [was] charged." This instruction, as well as the trend of the whole charge, recognized justifiable homicide as a substantive defense. " The judge was not bound to read Penal Code, § 76, having in his general charge instructed the jury as to the form of their verdict, and as to the effect of finding that the killing was justifiable." *Robinson* v. *State,* 118 *Ga.* 198. In the case of *Waller* v. *State,* 102 *Ga.* 684, the court nowhere in its charge instructed the jury what should be their finding in the event they found defendant was justified in the act, and it was in that case held to have been error to omit to give section 76 in charge. But in the case at bar, the tenor of the entire charge was to contrast murder and justifiable homicide ; that the jury must find the homicide to be murder before they could convict. The only inference to be drawn from the charge was that if the homicide was justifiable, the defendant should be acquitted. And the final instruction was as to the form of their verdict if they found the homicide to be murder ; and if they found that the homicide was not murder, they should return a verdict of not guilty. In this connection it may also be said that there is no merit in the complaint that the court did not instruct the jury that if they found his statement to be true, and if they found under his statement that the homicide was in fact justifiable, it would be their

duty to acquit the defendant. There was no request by the defendant to so charge. The court charged the law on the subject of murder and justifiable homicide, and the faith and credit to be given the defendant's statement. The court is not expected or required to sum up various facts and circumstances favorable to the accused, whether those facts appear from many witnesses or from one witness, or from the statement of the defendant, and instruct the jury that if such facts are found to be true, then the homicide would be justifiable. "It is not necessary for the court to apply the law given in charge to the jury to the facts of the case, when the application is plainly apparent." *Goode* v. *Rawlings*, 44 *Ga.* 593. The charge satisfies the law when the law applicable to the case is properly expounded to the jury and they are instructed to apply it to the facts and in that way reach a verdict.

11. The court charged the jury: "If you find that the circumstances attending the homicide were such as to cause in the mind of a reasonable man the fear that the deceased was attempting, by violence or surprise, to commit a felony upon the person of the defendant, and that the defendant shot under the influence of such fears, then the homicide would, under those circumstances, be justifiable." This excerpt from the charge is assailed by the defendant as being an incorrect statement of the law and restricting in narrower compass the right of defending one's person against a felonious attack than is given by the statute. Section 70 of the Penal Code justifies the killing, in defense of one's person, of one who is manifestly intending or endeavoring, by violence or surprise, to commit a felony on the person of the slayer; and the contention is that the word "attempting" in the charge is narrower in scope than the statutory words "manifestly intending or endeavoring." To manifestly intend an act implies more than mental resolution to do the act. The mental resolution must find some form of expression before it becomes manifest. In cases involving force, the slightest manifestation of intent to do the act would be an attempt in the accomplishment of the act. See *Johnson* v. *State*, 14 *Ga.* 59 (2). However, it is not necessary to decide that the word "attempt" is the exact equivalent of "manifestly intends." The charge complained of was not erroneous when construed with the entire charge. Just preceding this

charge, the court had read the section (§ 70) defining justifiable homicide, and the excerpt is taken from that portion of the charge wherein the court was instructing the jury that the danger need not be actual; if the circumstances attending the homicide were such as to excite the fears of a reasonable man that the deceased was attempting a felony on his person, and the defendant shot under the influence of such fears, the shooting and killing would be justifiable: The defendant in his statement made the issue that he shot the deceased to prevent the deceased from committing a felony on his person; that at the time he fired the fatal shot the deceased was attempting to shoot him; that this attempt consisted in part of deceased placing his hand on his hip-pocket as if to draw a weapon. On this issue the court delivered the part of the charge above quoted. It was an appropriate and correct statement of law as applied to the facts of the case.

12. The trial judge very properly declined to grant a new trial on the general grounds of the defendant's motion. The testimony upon which the State relied for a conviction discloses that the killing of the deceased was deliberate and without any shadow of justification. The defendant's plea of self-defense seems to have been based upon theory rather than upon fact. That the jury arrived at this conclusion, and that their finding met with the approval of the presiding judge, affords the defendant no just cause of complaint, taking into consideration the circumstances brought to light at the trial and the improbability that he acted under the fears of a reasonably courageous man. This being so, no reason appears for setting aside the verdict.

*Judgment affirmed. All the Justices concur.*