## 37014. GOBER v. THE STATE.

GREGORY, Justice.

Appellant, Issac Gober, was indicted in Newton County for murder and for two counts of aggravated assault. His motion to sever was denied, and he was tried on all three counts of the indictment before the same jury.

Gober lived with Willie Mae Parks, the murder victim, at her residence. On the afternoon of June 5, 1980, Gober and the victim's son, Eddie Brown, went out drinking and together consumed a pint of gin and three eight-packs of beer. Shortly before midnight the two returned and Gober asked the victim's daughter, Sarah Brown, where her mother was. She replied that her mother had gone to run an errand. Gober left. After the victim returned, Gober came back with a .22 caliber rifle and demanded that she come outside. When she refused to do so, Gober came into the house and told her to come outside; that he was going to kill her. After he repeated this threat, the victim walked over to Gober with one of her granddaughters in her arms. Gober grabbed her with one hand while continuing to hold the gun in the other hand. A struggle ensued during which time the victim dropped her granddaughter, and Sarah Brown twice started to call the police. Both times Brown hung up when Gober pointed his gun at her and threatened to kill her if she did not. She then ran out of the house and went through the woods about 75 yards to the Fox Trap Lounge to get help. She came back with several people, including Calvin Curry. Curry found Willie Mae Parks lying on the ground near the back porch and called an ambulance.

Pamela Lackey, another of Willie Mae Parks' daughters, was at the Fox Trap and returned with Sarah Brown and the others.

According to her testimony, after going into the house, she went out the back door and up the road. She heard two shots from the woods. Then she saw Gober who told her to stop or he would shoot. He had a rifle in his hands. He pointed it at her, and told her he had shot her mamma. He then hit her on the side of the head with the rifle and disappeared into the woods.

Willie Mae Parks died on the way to the hospital, from a .22 caliber gunshot wound to her abdomen which severed an artery. Gober turned himself in the next day and gave a statement to the police that during a struggle with the victim, the gun went off and he ran from the house through the woods where he discarded the rifle. A .22 caliber rifle was found in the woods which contained live rounds of the same type as the bullet removed from the victim. A crime lab witness testified that the bullet could have been fired from the rifle. He also testified that the lack of powder burns on the victim's clothing indicated that the gun was fired at her from a distance greater than three feet.

Gober was convicted of the murder of Willie Mae Parks and sentenced to life imprisonment. He was also convicted of the aggravated assault of Sarah Brown and sentenced to ten years to be served concurrently with the life sentence. The jury acquitted him on the other charge of aggravated assault.

(1) Appellant first contends that the trial court erred in denying his timely motion to sever the offenses. His motion requested the trial court to sever counts one and three from count two. Count two charged appellant with the aggravated assault of Pamela Lackey as to which he was acquitted.

Two or more offenses may be tried together if they: "(a) are of the same or similar character, even if not part of a single scheme or plan; or (b) are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan." *Dingler v. State,* 233 Ga. 462, 463 (211 SE2d 752) (1975) (citing ABA Standards which we adopted in that case).

Where two or more offenses are joined only because they are of the same or similar character, the trial court, upon motion of the defendant, must order separate trials for each of the offenses. *Dingler,* supra. But when they are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan, "... the court in the interest of justice *may* order that one or more of such charges be tried separately." Code Ann. § 26-506. (Emphasis supplied.) See *Coker v. State,* 234 Ga. 555, 557 (216 SE2d 782) (1975) (where accused was charged with armed robbery, rape, kidnapping, motor vehicle theft and escape and all the crimes were part of a continuous transaction, trial judge did not abuse his

discretion in denying severance). Compare *Waites v. State,* 138 Ga. 683 (235 SE2d 4) (1977).

The only evidence presented by the state as to count two was the testimony of Pamela Lackey. Her testimony would have been admissible in the trial of the murder and the other aggravated assault even if count two had been severed. The offense alleged in count two was committed with the same rifle, occurred at the same general location, involved the same family, and occurred only a few minutes after the other two offenses with which appellant was charged. In our opinion, all three alleged offenses were part of the same conduct within the meaning of that term as used in Code Ann. § 26-506. The evidence was not of such complexity as to hinder the jury from being able to distinguish the evidence and apply the law of the case intelligently to each alleged offense (and in fact, appellant was acquitted of the very count he wanted severed).

The trial court did not abuse his discretion in denying appellant's motion to sever count two.

(2) Appellant contends the trial court erred in failing to administer the oath required by Code Ann. § 59-704.1 prior to commencing jury voir dire. The record, as supplemented on motion by appellant, shows that the oath was not given.[1] Compare, *State v. Mayfield,* 109 SE2d 716, 723 (South Carolina 1959). It also shows that no objection was made to the failure to administer the oath. The state contends that appellant's failure to object distinguishes this case from *Ates v. State,* 155 Ga. App. 97 (270 SE2d 455) (1980). We agree.

Code Ann. § 59-806 states in part that, "In trials for felonies any juror may be put upon his voir dire ..." In *Smith v. State,* 168 Ga. 611 (4) (148 SE 531) (1929), the defendant contended that the failure to voir dire four jurors was reversible error. We held that the defendant forfeited his right to appellate review of the matter because he failed to object until after the verdict. See also *Kellam v. State,* 17 Ga. App. 401 (87 SE 158) (1915). It follows that a defendant may forfeit his right to a voir dire conducted under oath by failing to timely assert that right.

" 'Federal courts, including the Supreme Court, have declined to notice [alleged] errors not objected to below even though such errors involve a criminal defendant's constitutional rights.' United States v. Indiviglio, 352 F2d 276, 280 (1965), cert. denied, 383 U. S. 907 [86 SC

---

[1] The jury was put under oath prior to voir dire, but the oath administered was that set out in Code Ann. § 59-706 which applies only to civil cases, *Taylor v. State,* 121 Ga. 348 (2) (49 SE 303) (1904) and makes no reference to the necessity of responding truthfully to voir dire questions.

887, 15 LE2d 663] (1966). The reason for this rule is clear: if the defendant has an objection, there is an obligation to call the matter to the court's attention so the trial judge will have an opportunity to remedy the situation." Estelle v. Williams, 425 U. S. 501, 508 (96 SC 1691, 1695, 48LEd2d 126, 133); fn. 3 (1976).

There is nothing in the record in the instant case to indicate that appellant was prejudiced by any false answer given during voir dire. The voir dire was in fact very limited. Absent any showing of actual prejudice, we are not inclined to reverse a conviction because the voir dire was not conducted under oath where no objection was made below.[2] Accord, State v. Glaros, 170 Ohio St. 471, 11 Ohio Ops. 2d 215 (166 NE2d 379) (1960). Compare *Altman v. State,* 156 Ga. App. 185 (10) (273 SE2d 923) (1980).

Appellant's argument that harm must be presumed from the failure to administer the voir dire oath is misplaced. Although the point is not before us, we assume that had the trial judge refused to administer the oath despite having his attention called to the matter, his refusal would be presumed harmful. But, to paraphrase the United States Supreme Court, the presumption of harm which supports the existence of a right is not inconsistent with a holding that actual prejudice must be shown in order to provide relief from a waiver for failure to assert the right in a timely manner. Davis v. United States, 411 U. S. 233, 245 (93 SC 1577, 1584, 36 LE2d 216, 226) (1973). Compare *Morris v. State,* 200 Ga. 471 (1) (37 SE2d 345) (1946).

(3) Appellant urges reversible error because the trial court instructed the jury that his "plea of guilty is not evidence of his innocence." It is apparent that this was intended to refer to the plea of *not* guilty.

The general rule is that, "A mere verbal inaccuracy in a charge, which results from a palpable 'slip of the tongue,' and clearly could not have misled or confused the jury" is not reversible error. *Siegel v. State,* 206 Ga. 252 (2) (56 SE2d 512) (1949). Just prior to the error complained of, the court had instructed that appellant had entered his plea of *not guilty* to each and every count of the indictment. The charge as a whole contained no less than six subsequent occasions where the court accurately instructed the jury as to the guilt-innocence issue and the burden of proof resting on the State.

---

[2] The oath required by Code Ann. § 59-709 *was* administered, and *Slaughter v. State,* 100 Ga. 323 (28 SE 159) (1897), which found that oath to be jurisdictional, and held that the failure to give it may be raised for the first time after trial, does not control this case.

Furthermore, the jury had before it in its deliberations the indictment which indicated that the appellant had pled not guilty.

"No juror could have been misled or confused and no prejudice could flow from this palpable 'slip of the tongue.' " *Gosett v. State,* 142 Ga. App. 815 (2) (237 SE2d 220) (1977).

(4) In connection with the charges of aggravated assault, the trial court charged the jury as follows: "I charge you that an instrument may be shown to be a deadly weapon, that is, one likely to produce death, by direct proof as to the character of the weapon, by an exhibition of it to the jury, or by any other evidence such as would warrant the jury in finding that the instrument was one calculated to produce death."

Appellant complains of the trial court's refusal to charge his request to instruct the jury that in determining whether an instrument is a deadly weapon, they should consider the manner in which it is used at the time.

Several cases, in the context of deciding whether or not the state had proved that an instrument used to commit an assault was a deadly weapon, have held that an apparently functional firearm (whether or not actually functional) used in the manner in which a firearm is ordinarily used to inflict an injury, is a deadly weapon per se. *Watts v. State,* 142 Ga. App. 857 (4) (237 SE2d 231) (1977); *Riddle v. State,* 145 Ga. App. 328 (3) (243 SE2d 607) (1978); Cf. *Morris v. State,* 149 Ga. App. 21 (253 SE2d 421) (1979).

Appellant was acquitted as to the count of aggravated assault where the manner of use might have been an issue.[3] As to the other charge of aggravated assault, appellant twice pointed a loaded rifle at Sarah Brown and threatened to kill her. Under those circumstances, the gun was per se a deadly weapon and there was no error in the court's charge.

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 2, 1981.

*Ozburn & Rainey, J. Lynn Rainey,* for appellant.

*J. W. Morgan, District Attorney, Michael Walker, Assistant District Attorney, Arthur K. Bolton, Attorney General, W. Davis Hewitt, Assistant Attorney General,* for appellee.

---

[3] Among other things, appellant allegedly used his gun as a club to strike Pamela Lackey.