S08A1589. HARGETT v. THE STATE.
S08A1590. COX v. THE STATE.
S08A1591. ARMSTRONG v. THE STATE.
(674 SE2d 261)

HUNSTEIN, Presiding Justice.

Benjamin Hargett, his brother Angelo Armstrong and their cousin Michael Cox were convicted of murder in the shooting death of Tavares Redwine, the aggravated assaults of Adrian "A.J." Wood and Artis McGinty, and burglary arising out of a home invasion in Coweta County. They appeal from the denial of their motions for new trial.[1] We consolidated their appeals and affirm for the reasons that follow.

1. The evidence adduced at trial authorized the jury to find that, in the early hours of May 8, 2006, appellants and at least one other unidentified man forced entrance into a house rented by Redwine and McGinty. Appellants Hargett and Armstrong, with their faces uncovered and armed with handguns and an assault rifle, led the group; appellant Cox, wearing a bandana that covered half of his face, entered later and demanded money and drugs. Wood, who was a guest sleeping on the living room couch, was shot twice as he tried to run away. He survived by pretending to be dead, although his wounds left him permanently unable to use his left arm, and at trial identified appellants as his assailants, testifying that he had known them for years prior to the crimes in issue. McGinty was hit multiple times in the legs and hip by the assault rifle as he left his bedroom and stepped into the lit hallway; appellant Hargett then stood

---

[1] The crimes occurred in the early hours of May 8, 2006. Appellants were indicted January 3, 2007 in Coweta County. The indictment charged each appellant with malice murder, felony murder, three counts of aggravated assault (on victims Redwine, Wood and McGinty) and burglary. Appellants were found guilty of every count on May 4, 2007 and were sentenced that same day to life imprisonment for malice murder and four 20-year sentences on the aggravated assaults and burglary to run concurrently with each other and consecutive to the life sentence. Timely motions for new trial were filed and those motions, as amended, were denied in orders filed February 5, 2008. Notices of appeal were filed by appellant Hargett on February 29, 2008 and by appellants Cox and Armstrong on March 4, 2008. The appeals were docketed June 3, 2008 and orally argued September 22, 2008.

directly over McGinty, demanded he "give it up," and shot McGinty again in the buttocks. McGinty also testified that, as appellant Hargett was taking the money McGinty offered, the murder victim, Redwine, entered the hallway from his separate bedroom in response to the commotion; appellant Hargett shot Redwine in the mid-section, causing him to fall back into the room; appellant Hargett, joined by appellant Armstrong, then went into Redwine's room and stood over him; they demanded that Redwine "give it up" and when he did not, they shot him repeatedly in the body and genitals, urged on by appellant Cox, who was standing near the front of the house. McGinty also testified that, before leaving, appellant Armstrong knelt beside Redwine and fired a final shot into his head while appellant Hargett put a gun to McGinty's head and said "I'll do you in too." Redwine survived long enough to drag himself to the doorway before succumbing to his injuries. McGinty, despite suffering ten to fourteen gunshot wounds, survived and identified appellants as his assailants, testifying at trial that he was previously acquainted with appellant Hargett, was related to appellant Armstrong by marriage and recognized appellant Cox as someone he had previously "seen around" at various parties and football games.

The evidence adduced amply authorized a rational trier of fact to find appellants guilty beyond a reasonable doubt of the charged crimes. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. In a motion not joined by counsel for the other appellants, counsel for appellant Cox moved to strike potential juror Burgess for cause because the juror's father had been a police officer and assistant district attorney in California, she indicated she would believe a police officer over other witnesses at trial and she stated at one point that she had formed an impression about the guilt of appellants. The transcript of voir dire also showed that the juror was rehabilitated by questions posed by the State in which Burgess stated, inter alia, that she would not come in favoring the prosecution and that she both could and would judge the case based on the facts as established by the evidence and the law as given by the trial court. Because Burgess never stated a fixed and definite opinion of appellants' guilt, we conclude that the trial court did not abuse its discretion in failing to strike Burgess for cause. See *Lampley v. State*, 284 Ga. 37 (3) (663 SE2d 184) (2008).

3. It is well established that the failure to object in the trial court constitutes a waiver of a party's right to raise a matter on appeal. See, e.g., *Rosser v. State*, 284 Ga. 335 (3) (667 SE2d 62) (2008). Appellants have enumerated seven alleged errors on appeal that the record establishes are waived for failure to make a proper objection in the trial court. However, appellants have also raised those same

matters in their claim of ineffective assistance of trial counsel. We thus consider the alleged errors asserted by appellants within the analytical framework of an ineffectiveness claim, under which, in order to prevail, each appellant must show both that his trial counsel's performance was deficient and that, but for the deficient performance, there is a reasonable probability the outcome of the trial would have been different. Id. at 337 (4). See also *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984); *Smith v. Francis*, 253 Ga. 782 (1) (325 SE2d 362) (1985).

(a) For the reason set forth in Division 2, supra, appellants Hargett and Armstrong cannot establish an ineffectiveness claim based on their counsel's failure to join in the motion to strike potential juror Burgess for cause.

(b) Appellants contend trial counsel should have objected on the record to the trial court's failure to strike potential juror Green for cause[2] because she stated she knew victim Redwine, a friend, in that she had attended school and "hung out together sometimes" with him, and initially acknowledged that her friendship would impact her ability to be fair and impartial. But immediately after making these statements, Green affirmatively acknowledged that she could put that relationship aside and decide the case based on the facts from the evidence and the law. Green later stated she also knew the aggravated assault victims and reiterated she could be fair and impartial.

> For a juror to be excused for cause, it must be shown that he or she holds an opinion of the guilt or innocence of the defendant that is so fixed and definite that the juror will be unable to set the opinion aside and decide the case based upon the evidence or the court's charge upon the evidence. [*Garland v. State*, 263 Ga. 495, 496 (1) (435 SE2d 431) (1993)]; *McClain v. State*, 267 Ga. 378, 380 (1) (a) (477 SE2d 814) (1996). A prospective juror's doubt as to his or her own impartiality does not demand as a matter of law that he or she be excused for cause. *Waldrip v. State*, 267 Ga. 739, 745 (8) (c) (482 SE2d 299) (1997). . . . A conclusion on an issue of juror bias is based on findings of demeanor and credibility which are peculiarly in the trial court's province, and those

---

[2] The transcript reveals that defense counsel requested to approach the bench after Green's questioning was completed and that a discussion off the record occurred. Defense counsel at the hearing on the motion for new trial testified that he approached the bench to raise a motion to strike, which was then denied, and that it was his practice to make such objections before the bench rather than in front of the whole jury panel.

findings are to be given deference. *Kirkland v. State*, 271 Ga. 217, 219 (2) (518 SE2d 687) (1999).

*Corza v. State*, 273 Ga. 164, 166-167 (3) (539 SE2d 149) (2000). Because our review of the voir dire record does not reveal that Green had formed a "fixed and definite opinion" as to appellants' guilt, appellants cannot show how they were prejudiced by trial counsel's failure to move to strike Green for cause.

(c) After the rule of sequestration was properly invoked, the State failed to request the court's permission to allow Detective Yarborough, the lead investigator of the crimes, to remain in the courtroom. Defense counsel raised no objections to Yarborough's presence beside the prosecutor during the testimony of the first seven State witnesses. Appellants now contend trial counsel was ineffective for failing to object. However, appellants did not show that the trial court would not have allowed Yarborough to remain to assist the prosecutor with the orderly presentation of the State's case, see generally *Lewis v. State*, 283 Ga. 191 (4) (657 SE2d 854) (2008), and have established no prejudice to their defense from Yarborough's continued presence in the courtroom. To the contrary, the trial transcript reveals defense counsel on cross-examination used Yarborough's presence favorably to highlight inconsistencies he had heard in the testimony given by the earlier witnesses. This argument is without merit.

(d) Although defense counsel did not object to comments made by the prosecutor in opening statement that the State was "prepared to expose and refute the alibi defense we anticipate from" appellants and was "confident that we have the evidence to prove our case and to disprove the proffered defense," the record reflects that all appellants gave notice pursuant to OCGA § 17-16-5 (a) to the State of their intent to present an alibi defense, compare *Parker v. State*, 277 Ga. 439 (2) (588 SE2d 683) (2003) (no notice given); counsel for appellants set forth misidentification and alibi defenses in their opening statements; and all appellants presented alibi witnesses at trial. Accordingly, while it is inappropriate for a prosecutor in a criminal case to discuss in opening statement the evidence the State anticipates the defense will present at trial, *Parker v. State*, supra at 441 (2), appellants cannot carry their burden of showing that, had trial counsel objected to the prosecutor's improper comments, there is a reasonable probability the outcome of the trial would have been different. See *Jackson v. State*, 282 Ga. 494 (3) (651 SE2d 702) (2007). See also *Parker*, supra at 442 (2) (even where counsel objects, uncorrected argument of prosecutor does not require reversal where it is highly probable the improper argument did not contribute to judgment).

(e) Appellants Hargett and Armstrong contend trial counsel was ineffective for failing to renew a motion for mistrial after the trial court gave curative instructions in response to improper character evidence volunteered by victim Wood.[3] Because our review of the trial court's curative instructions reveals that they adequately preserved appellants' right to a fair trial and thus there was no abuse of discretion in denying the motion for mistrial, see generally *Scruggs v. State*, 273 Ga. 752 (2) (545 SE2d 888) (2001), renewing the motion would have been of no benefit to appellants and the failure to renew could not have prejudiced them so as to satisfy the prejudice prong of the test for ineffective assistance of counsel. See *Freeman v. State*, 278 Ga. 349 (2) (c) (603 SE2d 214) (2004).

(f) As to appellants' next assertion, we pretermit whether counsel performed deficiently because, in light of the fact that appellants were tried in superior court, they cannot show how they were prejudiced by Detective Yarborough's testimony that the magistrate court bound their case over to the superior court.[4] The transcript reflects that, to the extent the questions posed by defense counsel to Yarborough reflected incorrect information about the procedure involved in binding a case over to superior court, the matter was promptly corrected by the trial court. Thus, appellants could not have been prejudiced by counsel's questions.

(g) The trial transcript in this case is certified and, thus, pursuant to OCGA § 15-14-5, we must presume that the garbled version of the voir dire oath contained in the transcript truly, completely and correctly represents the oath actually given by the trial court.[5] Because that version of the voir dire oath deviated from the requirements of OCGA § 15-12-132, we conclude that defense counsel performed deficiently by failing to object to the improper oath.[6] However, appellants must show that they were prejudiced by

---

[3] At trial, Wood testified that he had known appellants for years. In response to the prosecutor's question, "When you say [you had seen them] around Newnan tell us which one you saw around Newnan, where and when?" Wood testified that he had seen appellant Cox at a particular car lot and "the other two defendants on prior occasions coming by to buy powder cocaine."

[4] We note that when the prosecutor sought to question the witness about the quantum of evidence necessary to bind a case over, defense counsel promptly objected and the prosecutor abandoned the line of questioning.

[5] OCGA § 15-12-132 requires the giving of an oath that "You shall give true answers to all questions as may be asked by the court or its authority, including all questions asked by the parties or their attorneys, concerning your qualifications as jurors in the case of _____ (herein state the case). So help you God." The transcript reflects that the voir dire oath given by the trial court started with: "You shall truly answer give to the Court under its authority as to your competency as a juror in the case of the State of the Georgia" and then listed the complete names of appellants and all of the charges, before concluding without the "So help you God" phrase.

[6] A review of counsel's testimony at the motion for new trial hearing establishes that

the trial court's failure to give the proper voir dire oath.[7] See *Stockford v. State*, 276 Ga. 241 (4) (575 SE2d 889) (2003) (defendant asserting ineffectiveness must show prejudice from trial counsel's failure to object to deviation in juror oath). See also *Gober v. State*, 247 Ga. 652 (2) (278 SE2d 386) (1981) (harm not presumed from failure to administer voir dire oath). Our review of the record establishes that appellants made no such showing. See generally id. (nothing in record showed that appellant prejudiced by any false answer given during voir dire); see also *Gainesville Radiology Group v. Hummel*, 263 Ga. 91, 94 (428 SE2d 786) (1993) (even where defendant proves that sworn juror answered untruthfully, reversal is not warranted unless defendant can also prove a correct response would have provided a valid basis for a challenge for cause). Appellants thus failed to satisfy the prejudice prong of the test for ineffective assistance of counsel.

(h) Although not separately enumerated as error, appellants additionally contend trial counsel were ineffective for failing to move to strike for cause potential jurors Pope and Hawk,[8] for failing to call critical witnesses[9] and for failing to investigate scientific evidence regarding the unreliability of eyewitness testimony.[10] Based on our review of the record, appellants have failed to overcome the strong presumption that counsel's conduct fell within the broad range of reasonable professional conduct, see *Williams v. State*, 279 Ga. 600 (3) (619 SE2d 649) (2005), and thus failed to carry their burden to establish ineffective assistance of counsel. See generally id.

4. We find no merit in appellants' assertion that the trial court violated OCGA § 17-8-57 merely by giving the jury the standard

---

counsel provided no reason for the failure to object, with counsel for appellants Hargett and Armstrong testifying that he "just miss[ed] it" and acknowledging there was no strategic decision behind the failure to object.

[7] Contrary to appellants' argument, the voir dire oath is not on the same standing as the juror oath. *Gober v. State*, 247 Ga. 652, n. 2 (278 SE2d 386) (1981). Moreover, while a criminal defendant may not waive the trial court's complete failure to administer the juror oath, when a juror oath is given that deviates from the one statutorily prescribed, the error in the oath is waived by a defendant's failure to object. *Phillips v. State*, 275 Ga. 595 (3) (571 SE2d 361) (2002).

[8] Pope had a cousin and a cousin's husband who had retired from law enforcement jobs; Hawk had a brother-in-law and a neighbor in law enforcement. While both indicated they might place more credibility on a police officer's testimony, both affirmatively stated they could fairly and impartially decide the case based on the evidence at trial. See *Lampley v. State*, supra, 284 Ga. at 39 (3).

[9] The only testimony by an uncalled witness properly adduced in the record, see generally *Dickens v. State*, 280 Ga. 320 (2) (627 SE2d 587) (2006), came from Latasha White, the cousin of appellant Armstrong's girlfriend, whose statement was consistent with the alibi testimony given by the girlfriend at trial.

[10] The expert called by appellants acknowledged on cross-examination that eyewitness identification is more reliable where, as here, the individual identified was previously known to the eyewitness.

pattern jury instruction on prior consistent statements. See *Sedlak v. State*, 275 Ga. 746 (2) (d) (571 SE2d 721) (2002) (OCGA § 17-8-57 violated only when court's charge assumes certain things as facts and intimates to jury what judge believes evidence to be).

5. State's witness Barbara Arnold testified that appellant Cox was at her home with her during the time the charged crimes occurred and asserted that, although she remembered talking with police three days after the charged crimes, she could not remember having told police that appellant Cox had not been with her during the relevant time. When the State recalled Arnold the next day, however, she changed her testimony so that it was consistent with the statement she had given the police. On cross-examination, defense counsel elicited from Arnold that, after leaving the stand the previous day, she had been "locked up" and charged with perjury.[11] Appellant Cox now asserts that Arnold's arrest constituted prosecutorial misconduct that violated his right to a fair trial, relying on OCGA § 16-10-93 (a), which makes it a crime for any person, "with intent to deter a witness from testifying freely, fully, and truthfully to any matter pending in any court" to communicate "directly or indirectly, to such witness any threat of injury or damages to the person, property, or employment . . . ." However, no testimony was elicited from Arnold at trial regarding the effect of her arrest on her testimony that day or the truthfulness (or lack thereof) of her prior day's testimony. Nor was Arnold called to testify regarding the matter at the hearing on the motion for new trial. Therefore, although we do not condone the prosecutor's actions in this case, the record is utterly devoid of any evidence intimating a violation of OCGA § 16-10-93 (a) by the prosecutor in regard to Arnold's arrest for the crime of perjury.[12] Moreover, we conclude that the record establishes beyond a reasonable doubt that the evidence regarding Arnold's arrest did not contribute to the conviction. See generally *Chapman v. California*, 386 U. S. 18, 22 (87 SC 824, 17 LE2d 705) (1967) (setting forth the harmless constitutional error rule).

6. The State of Georgia does not recognize the cumulative error rule. *Rogers v. State*, 282 Ga. 659 (11) (653 SE2d 31) (2007).

*Judgments affirmed. All the Justices concur.*

---

[11] The record establishes that the arrest did not occur in the presence of the jury.

[12] To the extent this claim is predicated upon the effect on the jury regarding Arnold's arrest, that evidence was elicited by appellant Cox. "It is well established that induced error is impermissible and furnishes no ground for reversal. [Cit.]" *Torres v. State*, 272 Ga. 389, 392 (7) (529 SE2d 883) (2000).

SEARS, Chief Justice, concurring.

I concur fully in the Court's opinion affirming the judgments in these consolidated appeals. I write separately to emphasize that in my view, the prosecutor's warrantless arrest of defendant Cox's alibi witness for perjury in the middle of trial, which resulted in her changing her testimony on the stand in a way favorable to the prosecution, violated Cox's right to due process of law. Such egregious government intimidation of a testifying defense witness constitutes prosecutorial misconduct, regardless of the fact that it occurred outside the presence of the jury.[13] However, as the Court explains, the record establishes beyond a reasonable doubt that the perjury arrest and changed testimony did not contribute to Cox's convictions.[14] Accordingly, the Court is correct in affirming all three judgments.

DECIDED JANUARY 26, 2009 —
RECONSIDERATION DENIED MARCH 9, 2009.

*Bruce S. Harvey, Jennifer S. Hanson, K. Julie Hojnacki, Little & Crumly, Samuel F. Little, Jr.*, for appellants.

*Peter J. Skandalakis, District Attorney, Raymond C. Mayer, Assistant District Attorney, Thurbert E. Baker, Attorney General, Sheila E. Gallow, Assistant Attorney General*, for appellee.

---

[13] See *Webb v. Texas*, 409 U. S. 95, 97-98 (93 SC 351, 34 LE2d 330) (1972); *Burke v. State*, 66 Ga. 157, 159 (1880). See generally Bennett L. Gershman, Prosecutorial Misconduct § 10.66 (2nd ed.); Lisa A. Wenger, Admonitions Against Perjury or Threats to Prosecute Potential Defense Witness, Inducing Refusal to Testify, as Prejudicial Error, 88 ALR 4th 388 (1991).

[14] *Chapman v. California*, 386 U. S. 18, 21-24 (87 SC 824, 17 LE2d 705) (1967) ("[W]e hold . . . that before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt.").