A03A0774. RICHEY v. THE STATE.
(583 SE2d 539)

SMITH, Chief Judge.

Terry Eugene Richey a/k/a Jack Frost was indicted by a Chatham County grand jury on four counts of aggravated assault with a deadly weapon, possession of a firearm during the commission of a crime, and possession of a firearm by a convicted felon. He was also charged as a recidivist under OCGA § 17-10-7. The jury found him guilty of three counts of aggravated assault and possession of a firearm during the commission of a crime. The trial court directed a verdict of not guilty as to one count of aggravated assault, and the State nolle prossed the charge of possession of a firearm by a convicted felon. Richey's trial counsel filed a pattern motion for new trial which was amended by appellate counsel to allege the same issues raised on appeal. After a hearing, the trial court entered an order addressing each issue and denying the motion for new trial. Richey appeals, asserting four enumerations of error. Finding no reversible error, we affirm.

1. Richey raises the general grounds. Construed in favor of the jury's verdict, the evidence shows that the victim was standing outside his home with some friends when a car full of young men drove by, yelled a threat to "shoot this s—t up," and sped off. A friend of the victim identified Richey as the driver of that car. Concerned that they had mistaken him for someone else, the victim and the friend followed the car to ask why its occupants had made the threats. When the victim found the car in a nearby apartment complex, he got out of his car to look for the former occupants. A man came running toward the car and held a pistol to the friend's head, and Richey walked past him carrying a rifle. At that point, the victim testified, Richey accosted him and without warning shot him with the rifle he was carrying. At least one more shot was fired after the first one struck the victim. Richey claimed that the victim had a pis-

tol, a claim the victim and his companion both denied. The occupants of a nearby apartment testified that they heard shots and that a bullet passed through their apartment, narrowly missing both of them. When one of the occupants looked out of the window, she saw the victim lying on the ground. The victim and an eyewitness to the shooting positively identified Richey as the shooter; the eyewitness knew Richey by name.

Richey addresses the general grounds only with respect to the victim who was wounded. This victim positively identified Richey as the man who shot him, and an eyewitness testified that she knew Richey and saw him fire the rifle several times. While Richey points to various inconsistencies in the testimony of the witnesses and asserts that the eyewitness was prejudiced against him, these matters were "inherently for the jury's determination. This court cannot substitute its judgment on the issue of credibility for that of the jury. The testimony of a single witness, even if inconsistent, is legally sufficient as long as there is some competent evidence to make out the State's case, as there was here." (Citations omitted.) *Smith v. State*, 237 Ga. App. 852, 853 (1) (521 SE2d 7) (1999). The evidence was more than adequate to support the jury's verdict.

2. Richey alleges prosecutorial misconduct, contending that the prosecutor "continually" attempted to introduce hearsay testimony. Specifically, Richey contends that the prosecutor repeatedly elicited hearsay testimony in questioning a police detective and that the detective also mentioned Richey's previous trial.

During the State's direct examination of the detective dispatched to the scene, the prosecutor asked, "Okay. When you arrived, what did you do?" The detective responded, "I spoke to the primary officer at the scene, which was Officer C. E. Daniels. At that time, he advised me that a shooting had occurred. He had a subject . . . that had been actually shot in the abdomen with what we believed to be a AK-47 —." At this point defense counsel interposed an objection, which the trial court sustained, instructing the detective, "Testify to what you know from your own knowledge . . . not what other people told you." The examination continued, and the State asked the detective if he spoke to the eyewitness. He responded, "No, I didn't. She wouldn't talk to me at the scene, but she provided me with her house telephone number and told me that — told me to call her and she would give me her statement over the phone because she was afraid of retaliation." Once again, defense counsel objected and the trial court sustained the objection and instructed the jury to disregard the answer. When the prosecutor asked the detective if the eyewitness had identified the assailant, defense counsel objected, and the trial court admonished the prosecutor not to ask questions that called for

hearsay, instructing her, "We want to know what he knows from his own personal knowledge." The examination continued:

> Q. Detective Polite, at that time, did you attempt to go around and talk to other witnesses at the scene?
> A. Yes, I did. Nobody — everybody was saying no, they didn't see anything.
> Q. All right. Did you knock on —.
> The Court: Don't ask him what other witnesses said at the scene. If you do it again, I'm going to hold you in contempt of court. I want you to follow my rulings. You understand that what witnesses say are hearsay and violates the rule against hearsay. Now don't ask the question again. Proceed.
> [The prosecutor]: Your Honor, I believe I asked if he knocked on any doors.
> The Court: No. You asked what the other witnesses said and he answered the question. It's a violation of the hearsay rule. Now, move on to something else other than what other people said.[1]

After further questioning, the detective in response to the question "What did you do next?" again began recounting what Richey's girlfriend and mother said. Defense counsel objected that "the man's volunteering all this hearsay about what the mother said, what the girlfriend said," and the trial court sustained the objection. Again the examination continued for some time, until the prosecutor asked the detective about the efforts he made to locate Richey, specifically cautioning him to answer "[w]ithout telling us what conversations you had with people." Once again the detective responded with testimony regarding what other people had told him, and the trial court intervened, sustaining the objection. At defense counsel's suggestion, the court explained to the detective the meaning of hearsay:

> The Court: . . . you cannot, as a general rule, testify as to what anybody else told you. It's called hearsay. And if someone paged you and told you something, that's hearsay, so you can only testify to things that you saw and heard from your own knowledge and you cannot testify what other people told you about.
> The Witness: Your Honor, if I may say, this right here was told directly to me for his — from his mother. She paged me.
> The Court: That's called hearsay and I direct you not to tes-

---

[1] It does appear that the trial court mischaracterized the prosecutor's question, which did not ask "what other witnesses said" but whether he attempted to talk to them.

tify to it. She's not a party to this case. She's not on trial and
she doesn't come with any exceptions of the hearsay rule.
The Witness: Okay.
The Court: Okay? So I direct you not to testify as to what
other people told you. Let the witnesses testify for them-
selves. Okay? Proceed.

Richey also complains that the detective mentioned the previous
trial of this case, which ended in a mistrial, when the prosecutor
asked him whether he had read Richey his *Miranda* rights and then
whether he had the signed form with him. The detective responded,
"No, I don't have it with me. At the last trial, it was entered in as evi-
dence." At this point, trial counsel asked for a bench conference and
requested a *Jackson-Denno* hearing. He did not, however, object to
the mention of the previous trial either contemporaneously or during
the brief discussion of the custodial statement that followed. Even
though there was no objection, the trial court cautioned the detective
outside the presence of the jury:

The Court: . . . By the way, Detective Polite, we'd agreed not
to mention that there was another trial and if you do it
again, I'll declare a mistrial and send this case back and try
it again. This case is being tried under the — as if it was the
first trial of this case and I really don't want the jury to
know that there was another trial and we'd agreed to do that
when this case first began and I direct you to not refer to the
other trial in this case. Do you understand?
The Witness: Yes, Your Honor.

Richey contends that the detective's repeated improper testi-
mony was deliberately elicited by the prosecutor, asserting a pattern
of "overall misconduct" as in *Carr v. State*, 267 Ga. 701 (482 SE2d
314) (1997). We disagree.

While "an extensive pattern of inappropriate and, in some cases,
illegal conduct in the course of the trial" on the part of the prosecutor
will on some occasions constitute harmful error, *Carr*, supra at 711
(10), the exchanges here do not rise to the level of the persistent and
multi-faceted misconduct both inside and outside the courtroom that
occurred in *Carr*. The testimony complained of, while improper,
arose not from the questions of the prosecutor but the witness's gar-
rulous narrative responses and his failure to understand the defini-
tion of hearsay, as shown by his exchange with the trial court. The
trial court extensively cautioned the witness and admonished the
prosecutor for asking questions which might elicit hearsay testimony.

The prosecutor also attempted to prevent the hearsay testimony by cautioning the witness.[2]

A charge of prosecutorial misconduct is serious, and "once appellant raises a charge of prosecutorial misconduct, he has the duty to prove it by the record and by legal authority." (Citations and punctuation omitted.) *Williams v. State*, 217 Ga. App. 636, 638 (4) (458 SE2d 671) (1995). We have previously found "no basis for characterizing a question that elicits a hearsay response as prosecutorial misconduct." *Gates v. State*, 252 Ga. App. 20, 22 (1) (555 SE2d 494) (2001). And the prosecution cannot "be penalized for the unexpected and unsolicited conduct of an agent of the State's law enforcement community." *State v. Maddox*, 185 Ga. App. 674, 675 (365 SE2d 516) (1988) (prosecutorial misconduct in the context of double jeopardy). This is particularly true with respect to the unsolicited and spontaneous mention of Richey's previous trial.

In addition, as the State points out, much of the allegedly improper testimony was duplicative of other evidence. The eyewitness testified that she would not talk to the police at the scene because "certain people [were] telling me I need to keep my mouth closed." The rifle apparently was not recovered, but the victim's friend testified that he saw Richey holding "an assault weapon," and the ballistics expert who testified on behalf of the State identified the bullets recovered from the scene as fired from "the AK-47 or SKS type of weapon." The detective also testified to Richey's custodial statement, in which Richey stated that the weapon in question was an AK-47, although he denied being the shooter. Richey's girlfriend testified that the police asked her about Richey's whereabouts, and although her testimony is somewhat unclear, it appears that she would not give them this information. "The erroneous admission of hearsay is harmless where, as here, legally admissible evidence of the same fact is introduced. In such a case, the hearsay is cumulative and without material effect on the verdict." (Citations omitted.) *Felder v. State*, 270 Ga. 641, 646 (8) (514 SE2d 416) (1999).

3. Richey also complains of testimony by the physician who operated on the victim and viewed an x-ray of the bullet, which was allowed to remain in his body. The State gave the witness a bullet recovered from the scene, and he testified that it was consistent with the bullet he observed in the victim's body. On cross-examination,

---

[2] The witness, as a police officer testifying in court, should be aware of the rules regarding hearsay testimony, and such repeated improper testimony is certainly cause for concern. In the absence of improper prosecutorial questioning, however, one possible remedy for such conduct would be to instruct the witness, outside the presence of the jury, that further hearsay testimony could result in serious personal consequences for the witness under the trial court's inherent contempt powers.

Richey's counsel questioned the witness about his identification of the bullet and asked, "There is really no way to tell whether this projectile and the one we see on the x-ray came from the same weapon unless we had an expert to look at the lands and grooves and markings on the casing. Is that correct?" and the doctor agreed. On redirect, the State asked the witness:

> Q. Sir, to your knowledge, can an expert look at lands and grooves on a casing if the gun was never recovered?
> A. We're getting beyond my area of expertise here.
> Q. Okay.
> A. However, I'll answer the question. You can look at the grooves on the bullet and not have the gun recovered. He could look at it. That was your question. Yeah, he could look at it.

Richey complains of this somewhat facetious response as inadmissible hearsay, beyond the witness's area of expertise, prejudicial, and denying him a fair trial. He cites the general law that hearsay is inadmissible and that a verdict cannot be based upon hearsay.

Assuming that the witness's answer was not merely an impatient retort and actually constituted expert testimony and also assuming that Richey's counsel did not open the door for the testimony by questioning the witness on the same topic, the qualification of this doctor as an expert went beyond general medical practice. He was also qualified, without objection, on his treatment of gunshot wounds. Moreover, after Richey objected during the qualification of the witness, he was also qualified as to his knowledge of firearms and weapons, including his military experience, his study of ballistics and firearms, and his publication on ballistics and firearms in clinical practice. Richey did not voir dire him on this point, and the court qualified him as an expert in the area. Furthermore, "[e]ven when an expert's testimony is based on hearsay, the lack of personal knowledge on the part of the expert does not mandate the exclusion of the opinion but, rather, presents a jury question as to the weight which should be assigned the opinion. The evidence should go to the jury for whatever it's worth." (Citation and punctuation omitted.) *Roberts v. Baker*, 265 Ga. 902, 903 (1) (463 SE2d 694) (1995). In addition, a ballistics expert testified and gave the testimony to which Richey objects here. Any testimony complained of was cumulative and harmless. *Felder*, supra, 270 Ga. at 646 (8).

4. Finally, Richey asserts ineffective assistance of counsel. The claim of ineffective assistance of trial counsel is based almost entirely upon failure to move for a mistrial "when the State sought repeatedly to introduce hearsay evidence." As the trial court observed at the

hearing on the motion for new trial, "I don't suspect that there's going to be a lack of competency shown by failure to move for a mistrial which is a strategic move with all kinds of consequences to it." Richey's contention of ineffective assistance here is foreclosed by his failure to call trial counsel to testify. In the absence of testimony from trial counsel, his actions are presumed to be strategic. *Hall v. State*, 255 Ga. App. 631, 636 (4) (b) (566 SE2d 374) (2002).

Richey also contends that his counsel erred in failing to impeach the eyewitness, but Richey did not raise this contention in his motion below and thus has waived the right to assert it on appeal. *Banks v. State*, 244 Ga. App. 191, 193 (1) (d) (535 SE2d 22) (2000). Richey also appears to make a "cumulative error" argument, but Georgia does not recognize this principle. *Choat v. State*, 246 Ga. App. 475, 476, n. 1 (540 SE2d 289) (2000).

*Judgment affirmed. Ruffin, P. J., and Miller, J., concur.*

DECIDED JUNE 17, 2003 —

*Martin G. Hilliard*, for appellant.

*Spencer Lawton, Jr., District Attorney, Nancy G. Brimberry, Assistant District Attorney*, for appellee.