S04G1788. THE STATE v. HERENDEEN et al.
(613 SE2d 647)

BENHAM, Justice.

We granted a writ of certiorari to the Court of Appeals in order to review its decision concerning the scope of the psychologist-patient privilege provided in OCGA §§ 24-9-21 (6) and 43-39-16. See *Herendeen v. State,* 268 Ga. App. 113 (601 SE2d 372) (2004).

Drs. Dennis Herendeen and Sam Haskell are licensed psychologists practicing in Douglasville, Georgia. In May 2003, the psychologists and The Psychology Center, a professional corporation, received a subpoena to appear before the Douglas County grand jury and to bring with them "all records and transcripts on patients [A. P.] and [M. P.]." The patients are the minor children of Regina and William Payne. William Payne was indicted in December 2000 for aggravated child molestation, child molestation, and cruelty to children, with all counts naming A. P. as the victim, and Regina was charged in the same indictment with cruelty to children for her alleged failure to stop William from molesting A. P. M. P. was listed by the State in the criminal action as a possible witness. The children were removed from their parents' custody in October 2000, and the Juvenile Court of Douglas County gave temporary legal custody of M. P. to the maternal grandparents and custody of A. P. to the Department of Family and Children Services (DFACS), which retained custody for several years and placed A. P. in a foster home.[1] While A. P. was in foster care, a Social Services case plan for reunification of Regina with

---

[1] Shortly thereafter, M. P. was returned to Regina's custody. At the June 2003 hearing, the assistant district attorney reported A. P. was living in Indiana in the custody of the maternal grandmother.

A. P., devised by the Georgia Department of Human Resources and filed with the juvenile court, provided that the caseworker and foster parents would arrange for A. P. to receive individual counseling/therapy and Regina was to enroll M. P. in individual therapy. In an order filed January 29, 2002, the juvenile court noted A. P. and Regina were having joint therapy sessions with Dr. Herendeen; in its August 6, 2002, order, the juvenile court noted Dr. Herendeen did not recommend the return of custody of A. P. to Regina until Dr. Herendeen could meet with Regina after obtaining information on the progress of her therapy from her counselor.

Citing the psychologist-patient privilege and noting that the subpoena did not contain the patients' consent to the release of the requested material, the doctors and The Psychology Center moved to quash the subpoena. The trial court conducted a hearing at which both parents were represented by separate counsel, as was A. P. Believing the privilege could only be invoked when the patient voluntarily sought treatment, the trial court concluded the children's records were not subject to the privilege because the counseling "was done pursuant to court order with express contemplation of recommendations to the court based upon that therapy." The trial court ordered appellants to produce the records for an in camera inspection for redaction of any portion relating to the therapy provided Regina, whose records were not sought under the subpoena and who participated in counseling sessions with Dr. Herendeen and A. P.

The Court of Appeals granted an application for interlocutory review and, citing our decision in *Lucas v. State*, 274 Ga. 640 (8) (555 SE2d 440) (2001), determined the existence of a psychologist-patient relationship did not turn on whether the patient had sought treatment voluntarily, but on whether treatment was given or contemplated. *Massey v. State*, 226 Ga. 703 (4) (177 SE2d 79) (1970). The Court of Appeals went on to hold the privilege does not cover "records that were not prepared in the course of treatment or do not involve patient communications." *Herendeen v. State,* supra, 268 Ga. App. at 115. Accordingly, the Court of Appeals affirmed the trial court's order requiring the psychologists to submit their patient records to the trial court for an in camera inspection, and provided a standard, stated in the negative, to be used in discerning what was privileged material. We granted the petition for a writ of certiorari filed by the District Attorney for Douglas County.

Georgia has statutorily recognized psychologist-patient communications to be confidential since the enactment of OCGA § 43-39-16 in 1951.[2] Ga. L. 1951, p. 408, § 18. In 1995, the communications

---

[2] OCGA § 43-39-16 states: "The confidential relations and communications between a

between a psychologist and patient were listed among the admissions and communications statutorily excluded from evidence on grounds of public policy. OCGA § 24-9-21 (6); Ga. L. 1995, p. 858, § 1.[3] See *Wiles v. Wiles*, 264 Ga. 594 (1) (448 SE2d 681) (1994) (the two statutes extend a privilege against disclosure to the confidential communications between a licensed psychologist and patient). In recognizing a psychotherapist privilege,[4] Georgia is in accord with the other 49 States, the District of Columbia, and all federal courts. *Jaffee v. Redmond*, 518 U. S. 1, 12 (116 SC 1923, 135 LE2d 337) (1996) (where the U. S. Supreme Court recognized the psychotherapist privilege under Rule 501 of the Federal Rules of Evidence, based in part on the recognition of the privilege by each of the 50 States). In 1995, the scope of Georgia's privilege was statutorily expanded to cover confidential communications between a patient and a licensed clinical social worker, clinical nurse specialist in mental health, licensed marriage and family therapist, and licensed professional counselor. Ga. L. 1995, p. 858, § 1; OCGA § 24-9-21 (7). In light of that expansion, it is appropriate to refer to the privilege at issue as the "mental health privilege." See *Kennestone Hosp. v. Hopson*, 273 Ga. 145, 148 (538 SE2d 742) (2000).

Protecting confidential mental health communications from disclosure serves an important private interest and a public interest. *Jaffee v. Redmond*, supra, 518 U. S. at 10-11. As far as the individual patient's private interest is concerned, confidentiality is a sine qua non for successful psychotherapeutic treatment since a psychotherapist's ability to help a patient is completely dependent upon the patient's willingness and ability to talk freely, and assurances of confidentiality and privilege foster the psychotherapist's ability to function. Id., 518 U. S. at 10. See also *Kennestone Hosp. v. Hopson*, supra, 273 Ga. at 148, where we observed that " '[t]he purpose of the privilege is to encourage the patient to talk freely without fear of disclosure and embarrassment, thus enabling the psychiatrist to render effective treatment of the patient's emotional or mental

licensed psychologist and client are placed upon the same basis as those provided by law between an attorney and client; and nothing in this chapter shall be construed to require any such privileged communication to be disclosed."

[3] OCGA § 24-9-21 states in part:
  There are certain admissions and communications excluded on grounds of public policy. Among these are: (1) Communications between husband and wife; (2) Communications between attorney and client; (3) Communications among grand jurors; (4) Secrets of state; (5) Communications between psychiatrist and patient; (6) Communications between licensed psychologist and patient as provided in Code Section 43-39-16. . . .

[4] We use the term "psychotherapist" to encompass all the relationships set forth in OCGA § 24-9-21 (5)-(8).

disorders.' [Cit.]" Since "[t]he mental health of our citizenry . . . is a public good of transcendent importance[,]" the privilege serves the public interest "by facilitating the provision of appropriate treatment for individuals suffering the effects of a mental or emotional problem." *Jaffee v. Redmond*, supra, 518 U. S. at 11.

In order to invoke the statutory mental health privilege in Georgia, "the requisite relationship of [mental health provider] and patient must have existed, to the extent that treatment was given or contemplated." *Massey v. State*, supra, 226 Ga. 704 (4). That a person sought mental health care is evidence of the existence of the requisite relationship (see *Kimble v. Kimble*, 240 Ga. 100 (1) (239 SE2d 676) (1977)), but is not a necessary prerequisite to the establishment of the relationship. *Mrozinski v. Pogue*, 205 Ga. App. 731 (1) (423 SE2d 405) (1992). See *Lucas v. State*, supra, 274 Ga. 640 (8) (treatment records were privileged even though patient had not sought out mental health care). The requisite professional relationship does not exist when the mental health provider is appointed by the court to conduct a preliminary examination to evaluate a person's mental state because, in such a situation, mental health treatment is not given or contemplated. *Kimble v. Kimble*, supra, 240 Ga. 100 (1). See also *Wiles v. Wiles*, supra, 264 Ga. at 596; *Massey v. State*, supra, 226 Ga. at 704-705.[5] Similarly, no professional relationship is formed because no mental health treatment is given or contemplated when a court, acting pursuant to OCGA § 9-11-35, orders a plaintiff in a tort action to undergo a psychiatric examination (*Roberts v. Forte Hotels*, 227 Ga. App. 471 (7) (489 SE2d 540) (1997)), or, invoking OCGA § 15-11-100, orders persons involved in a parental rights' termination action to undergo a mental evaluation. See *In the Interest of M. N. H.*, 237 Ga. App. 471 (4) (517 SE2d 344) (1999); *In the Interest of L. H.*, 236 Ga. App. 132 (3) (511 SE2d 253) (1999); *In the Interest of R. M.*, 194 Ga. App. 888 (1) (392 SE2d 13) (1990). In such cases, the lack of mental health treatment or contemplation thereof precludes the existence of the statutory privilege because treatment or contemplation thereof is a prerequisite to the existence of the professional relationship necessary for the privilege. *Massey v. State*, supra, 226 Ga. 703 (4). See also *Lucas v. State*, supra, 274 Ga. 640 (8). In light of the above, we disapprove language in *M. N. H.*, *L. H.*, *R. M.*, and *Johnson v. State*, 255 Ga. App. 544, 546 (566 SE2d 353) (2002), which states the privilege exists only when the patient voluntarily seeks treatment,

---

[5] See also F.S.A. § 90.503 (1) (b) (Fla.), which defines "patient," for purposes of the mental health privilege, as one "who consults or is examined or interviewed by, a psychotherapist for purposes of diagnosis or treatment. . . ." Compare Ala. R. Evid. Rule 503 (a) (1) and O.R.S. § 40.230, Rule 504 (1) (b) (Oregon) which define "patient" as one "who consults or is examined or interviewed by a psychotherapist."

and thereby supports the idea that court-ordered (i.e., involuntary) interaction with a mental health provider can never be privileged. In each of these cases, no privilege existed because the mental health provider was appointed by the court to evaluate the mental state of an individual involved in a termination of parental rights or a defendant in a criminal prosecution who had announced his intent to raise as issues his competency to stand trial and his sanity at the time of the incident. There was no privilege because there was no treatment, not because the interaction was involuntary.

The privilege covers communications and admissions between a patient and a mental health provider (OCGA § 24-9-21), and "[t]he confidential relations and communications between a licensed psychologist and client are placed upon the same basis as those provided by law between attorney and client." OCGA § 43-39-16. Thus, transcripts of the communications between M. P. and A. P. and their mental health providers are privileged. See *Dynin v. Hall,* 207 Ga. App. 337 (1) (428 SE2d 89) (1993); *Wilson v. Bonner,* 166 Ga. App. 9 (5) (303 SE2d 134) (1983). Any information in the possession of Dr. Herendeen, Dr. Haskell, or The Psychology Center which had its origins in communications from the patients to the medical health providers is privileged. *Johnson v. State,* 254 Ga. 591 (7) (331 SE2d 578) (1985). Cf. *Kimble v. Kimble,* supra, 240 Ga. 100, where this Court impliedly determined the privilege barred a psychiatrist from disclosing anything about the patient-psychiatrist relationship when this Court used the privilege to affirm the denial of a party's attempt to depose another party's psychiatrist. Without an express statement of waiver executed by the patient or the patient's " 'decisive unequivocal conduct reasonably inferring the intent to waive,' " (*Kennestone Hosp. v. Hopson,* supra, 273 Ga. at 148), these matters are not subject to revelation pursuant to the grand jury subpoena. However, the *fact* of employment of or treatment by a mental health provider and the dates thereof do not fall within the mental health privilege and may be disclosed. *Johnson v. State,* supra, 254 Ga. 591 (7); *Nat. Stop Smoking Clinic &c. v. Dean,* 190 Ga. App. 289 (378 SE2d 901) (1989).

At the hearing on the motion to quash, Regina, as mother and custodian of M. P., objected on the child's behalf to the release of any of the material in the possession of the psychologists. The trial court queried whether a guardian ad litem should be appointed for M. P., listed by the State as a possible witness in the criminal prosecution, since the child's interests might conflict with the interests of Regina, a defendant in the criminal proceeding. As mentioned earlier, an attorney representing A. P., the child alleged in the indictment to be the victim and currently in the custody of the maternal grandmother, appeared at the hearing and expressed opposition to the release of the material in the possession of the psychologists. Because the trial

328

court determined the material was not privileged, it was unnecessary for the court to address the issue of waiver. In light of the determination by this Court and the Court of Appeals regarding the question of privilege, the issue of the appointment of a guardian ad litem for M. P. for the purpose of determining whether M. P. wishes to invoke the mental health privilege should be revisited by the trial court.

We affirm the decision of the Court of Appeals insofar as it holds the records sought from Drs. Herendeen and Haskell and The Psychology Center are subject to the mental health privilege. We agree the case must be remanded to the trial court in order that it conduct an in camera review of the mental health providers' file, and we direct the trial court to determine if there is any material contained therein that does not have as its origin communications between A. P. or M. P. and their mental health providers. We hold that any transcripts of communications between the children and their mental health providers are privileged material and not subject to disclosure. On remand, the trial court should also determine whether either child is in need of a guardian ad litem to decide whether the child should invoke the mental health privilege.

*Judgment affirmed and case remanded with direction. All the Justices concur.*

DECIDED MAY 23, 2005.

*J. David McDade, District Attorney, James E. Barker, Pamela D. Brophy, Christopher R. Johnson, Assistant District Attorneys*, for appellant.

*James M. Allison, Jr., Edwards, McLeod & Money, Jennifer McLeod, Sherrod & Bernard, John W. Sherrod, Wallace C. Clayton*, for appellees.

*Rogers & Hardin, Robert B. Remar, David A. Webster*, amici curiae.