S07A1210. ROGERS v. THE STATE.
(653 SE2d 31)

HUNSTEIN, Presiding Justice.

James Randall Rogers was convicted of murder and sentenced to death in 1985. See *Rogers v. State*, 256 Ga. 139 (344 SE2d 644) (1986). Rogers thereafter sought habeas corpus relief alleging that he is mentally retarded. Pursuant to *Fleming v. Zant*, 259 Ga. 687 (4) (386 SE2d 339) (1989), see also *Rogers v. State*, 276 Ga. 67 (1) (575 SE2d 879) (2003), a jury determined in 2005 that Rogers is not mentally retarded. He appeals. Finding no reversible error, we affirm.

1. Rogers has the burden of proving that he is mentally retarded by a preponderance of the evidence. *Fleming*, supra, 259 Ga. at 691. Mental retardation is defined as "significantly subaverage general intellectual functioning resulting in or associated with impairments in adaptive behavior which manifested during the developmental period." OCGA § 17-7-131 (a) (3). The jury heard evidence regarding

---

six intelligence quotient ("IQ") tests administered to Rogers during his lifetime, with scores of 78, 84, 85, 68, 66 (which, due to a mathematical error, should have been 70) and 89. Expert testimony established that IQ scores between 70 and 84, while indicating borderline intellectual functioning, do not indicate mental retardation. Additionally, there was testimony that Rogers checks out prison library books on a regular basis and is able to use the computer. Three State experts who examined Rogers opined that he is not mentally retarded; three experts for Rogers disagreed. Although evidence was adduced indicating that Rogers exhibits brain dysfunction, Rogers's own expert testified that there is no way to determine what caused the dysfunction and that a person can have brain dysfunction without being mentally retarded. This expert also testified that the use of drugs and alcohol can have a significant impact on brain function and that Rogers had reported using drugs and alcohol.

Construing the evidence in favor of the verdict, a rational trier of fact could have found that Rogers failed to meet his burden of proof. See *Morrison v. State*, 276 Ga. 829, 830-831 (1) (583 SE2d 873) (2003). See also *Stripling v. State*, 261 Ga. 1, 4 (3) (b) (401 SE2d 500) (1991) (IQ test scores of 70 or below are not conclusive); *Fleming*, supra, 259 Ga. at 691 (jury not bound by expert opinions or test results, "but may weigh and consider all evidence bearing on the issue of mental retardation").

2. (a) Rogers's death sentence does not violate his equal protection and due process rights merely because, at age 19 when he committed the crimes, he may have possessed the same attributes of a juvenile offender that prompted the United States Supreme Court to prohibit the imposition of the death penalty on offenders under age 18. *Roper v. Simmons*, 543 U. S. 551, 574 (III) (B) (125 SC 1183, 161 LE2d 1) (2005). That Court recognized that "a line must be drawn" and "[t]he age of 18 is the point where society draws the line for many purposes between childhood and adulthood. It is, we conclude, the age at which the line for death eligibility ought to rest." Id. at 574.

(b) Rogers also argues that his equal protection and due process rights were violated because, due to his "organic brain damage," he has the same diminished capacities enumerated in *Atkins v. Virginia*, 536 U. S. 304, 318 (IV) (122 SC 2242, 153 LE2d 335) (2002) that are characteristic of a mentally retarded defendant, but he is treated differently because he does not have IQ scores under 70. However, Georgia's statutory definition of mental retardation is consistent with the clinical definitions relied upon in *Atkins*, compare id. at 308, n. 3 with OCGA § 17-7-131 (a) (3), and, contrary to Rogers's contentions, there are no "hypertechnical" requirements that a defendant have certain test scores in order to be found mentally retarded. See

*Stripling,* supra, 261 Ga. at 4. We conclude that Rogers's arguments in this regard are without merit. See generally *Fleming,* supra, 259 Ga. at 688 (1).

We reject Rogers's contention that the trial court abused its discretion by not submitting to the jury special interrogatories based on *Atkins* (wherein the jury would find whether Rogers has certain enumerated "diminished capacities"), along with related jury instructions and a verdict form utilizing the statutory definition of mental retardation. The trial court properly followed the procedures this Court established for *Fleming* trials by instructing the jury on the statutory definition of mental retardation set forth in OCGA § 17-7-131 (a) (3); by charging the jurors that Rogers bore the burden of proving his mental retardation by a preponderance of the evidence; and by charging the jury that they were not bound by the opinion testimony of expert witnesses or by test results, but could weigh and consider all evidence bearing on the issue. See *Fleming,* supra, 259 Ga. at 691. See generally *Sims v. Heath,* 258 Ga. App. 681, 687 (577 SE2d 789) (2002) (form of verdict and submission of special verdict are within trial court's discretion and will not be overturned absent abuse of that discretion).

3. We find no abuse of the trial court's discretion in the exercise of its inherent power to control court proceedings by limiting the number of attorneys permitted to speak before the court to the two attorneys appointed to Rogers. *Lynd v. State,* 262 Ga. 58, 62 (9) (a) (414 SE2d 5) (1992). Although the trial court prevented a pro bono member of Rogers's defense team from arguing certain motions, it did not prevent her from continuing to assist defense counsel. Compare *United States v. Gonzalez-Lopez,* 548 U. S. 140 (126 SC 2557, 2563, 165 LE2d 409) (2006). Rather, it merely limited argument to Rogers's lead counsel and co-counsel, both of whom were appointed two years before Rogers's trial with his full agreement and in response to his counsel's motion that, as a precautionary measure, death-qualified counsel be appointed. See Unified Appeal Procedure (II) (A) (1). Furthermore, Rogers's co-counsel, who ultimately argued the motions at issue, never intimated that he was not prepared to go forward. The record shows that he was familiar with the facts and issues involved, having the previous day conducted the expert's deposition that formed a substantial basis for the motions, and the trial court had before it the written motions and supporting briefs submitted by Rogers's counsel.

4. Rogers contends that the trial court erred by conducting his mental retardation trial as a civil, rather than a criminal, proceeding. See generally *Stephens v. State,* 270 Ga. 354, 356 (2) (509 SE2d 605) (1998) (*Fleming* trial is deemed part of guilt/innocence phase). Specifically, Rogers argues that the trial court erred by failing to follow

OCGA § 15-12-166, which provides that in criminal cases the State must accept or reject each potential juror before the defendant is required to do so. However, our review of the record establishes that Rogers repeatedly reiterated that his *Fleming* trial should be conducted as a civil proceeding,[1] that the trial court denied Rogers's request regarding the order of juror questioning based on these representations by counsel, and that Rogers then acquiesced to the trial court's ruling.[2] Under these circumstances, we find that Rogers has waived any objection to the trial court conducting his *Fleming* trial as a civil proceeding and to the order of the exercise of his peremptory challenges. See *Pye v. State*, 269 Ga. 779, 787 (14) (505 SE2d 4) (1998) (party cannot ignore perceived error at trial, take chance on favorable verdict, and then complain on appeal).

5. Any error in the application of OCGA § 15-12-165 (State and defendant in death penalty cases each allowed 15 peremptory challenges) to Rogers's trial was invited by defense counsel and, as such, is not grounds for reversal. *Pye*, supra, 269 Ga. at 787 (14). See also *Madison v. State*, 281 Ga. 640, 642 (2) (c) (641 SE2d 789) (2007) (defendant not deprived of protected right by retroactive application of OCGA § 15-12-165, reducing number of peremptory strikes, as peremptory strikes are procedural and not substantive in nature).

6. Rogers contends the trial court erred by admitting the testimony and materials of the State's witness, psychologist Dr. Richard Hark. Dr. Hark examined Rogers in 1976 when he was in a juvenile detention center and administered intelligence and personality tests to Rogers in 1977 at the request of the juvenile court (the "1977 report"). Dr. Hark administered these tests again in 1980 during the

---

[1] During the pretrial conference, the trial court asked defense counsel, "[I]s this in the nature of a civil case?" to which counsel responded unequivocally, "Yes, sir." Additionally, counsel stated to the jury during voir dire that "the Georgia law on what you as a jury will be looking at in this particular case . . . is a civil matter"; stated in opening that, "This is, as the Judge said, a civil case dealing with one issue"; and proceeded under and argued the civil rules for the admission of expert testimony. See OCGA § 24-9-67.1 and Division 7, infra.

[2] The trial transcript shows that once voir dire was completed and counsel were preparing to strike the jury, the following exchange took place:
[Defense Counsel]: And who goes first?
THE COURT: Well, you get to go first.
[Defense Counsel]: We would like for the State to go first.
THE COURT: Well, you know, this – you are going to get to make the first opening statement. You are going to get to open and close of the final argument. . . . [T]his is, we say a civil case, . . . And so, I'm switched over to the civil rules to the extent that I can possibly do that. So, you know, that being the case, you know, you are going to have to go first.
[Defense Counsel]: I understand, Judge.
THE COURT: Okay.
[Defense Counsel]: I just wanted to get that clarified.

course of Rogers's murder trial[3] pursuant to an order of the trial court, which was entered in response to the request by Rogers's counsel for a psychological evaluation (the "1980 report"). In his mental retardation trial, Rogers filed motions in limine to exclude Dr. Hark's testing materials and testimony; the trial court deferred its ruling until the State sought to introduce this testimony and evidence during trial, when Dr. Hark would be available for voir dire.

(a) As to the 1977 report, Rogers called a mental health expert who had executed an affidavit in which the expert stated he considered Dr. Hark's 1977 report when rendering his opinion. The State cross-examined the witness about the 1977 report and the trial court overruled Rogers's objection because of his expert's affidavit. Rogers then explored the validity of the 1977 report on re-direct. Subsequently, when the State sought to call Dr. Hark, the trial court examined the witness and ruled inadmissible his testimony and materials related to the 1977 report, finding that Dr. Hark had seen Rogers for treatment. See *State v. Herendeen*, 279 Ga. 323 (613 SE2d 647) (2005) (psychotherapeutic privilege invoked when treatment given or contemplated).

Rogers contends the trial court erred by deferring its ruling. However, a "trial court has an absolute right to refuse to decide the admissibility of evidence . . . prior to trial. [Cits.]" *State v. Johnston*, 249 Ga. 413, 415 (291 SE2d 543) (1982). Although Rogers also contends the trial court erred by refusing to give a curative instruction regarding Dr. Hark's 1977 report, Rogers acquiesced during the charge conference to the trial court's decision to give the jury a general curative instruction to consider as evidence only the exhibits admitted and with them in the jury room, which did not include the 1977 report. Because Rogers did not object or request further instructions after the jury was charged, he has failed to preserve this issue for appeal. *Fann v. State*, 254 Ga. 514, 517 (3) (331 SE2d 547) (1985).[4]

(b) As to the 1980 report, the trial court admitted Dr. Hark's testimony and materials, finding that Dr. Hark saw Rogers only for evaluation purposes, specifically to explore the possibility of an insanity plea, rather than for professional treatment. See *Herendeen*, supra, 279 Ga. at 326. Rogers challenges this ruling, first contending that these materials are protected by the psychologist/patient privilege, OCGA §§ 24-9-21 (6) and 43-39-16, because the order directing

---

[3] Rogers's original convictions and sentences in 1982 were reversed on direct appeal due to the unconstitutional composition of the Floyd County grand jury. *Devier v. State*, 250 Ga. 652 (1) (300 SE2d 490) (1983).

[4] We note that defense counsel in closing argument stated to the jury that the tests administered by Dr. Hark in 1977 had been removed by the trial court and the jurors should "wipe [their] mind[s] clear of those particular documents."

Dr. Hark to examine Rogers stated that "the relationship between Dr. Hark and Defendant Rogers shall be treated as if the Defendant himself were the employer of Dr. Hark." However, the order also states that "[c]ommunications between [Rogers] and a private psychologist would be privileged . . . as long as there was an expectation of confidentiality." Under Georgia law, there can be no expectation of confidentiality based on the psychologist/patient privilege when the sole purpose of the relationship is evaluation. *Herendeen,* supra. Even assuming, arguendo, that such privilege existed as to the 1980 report, when Rogers "raise[d] a claim of mental retardation, putting [his] mental capacity at issue, 'such affirmative defense waive[d] the privilege under OCGA § 24-9-21 (5) through (8).' [Cit.]" *Perkinson v. State,* 279 Ga. 232, 236 (6) (610 SE2d 533) (2005). We reject Rogers's argument that because the psychologist/patient privilege has been placed on a par with the attorney/client privilege, OCGA § 43-39-16, it affords any greater protection. See *Wiles v. Wiles,* 264 Ga. 594, 599-600 (449 SE2d 681) (1994) (Sears, J., concurring) (Legislature did not intend to give psychologists' patients greater protection than psychiatrists' patients).

Citing OCGA § 9-11-26, Rogers also contends that the 1980 report is protected under the work product doctrine. Pretermitting whether Rogers is correct in relying on the Civil Practice Act, see Division 4, supra, the trial court did not abuse its discretion by ruling that Rogers had waived any privilege based on work product. In 2001, the State sought to obtain Rogers's records "relat[ed] to his mental abilities." After a hearing, the trial court found that the records sought by the State "are essential for the defense of the action pending before the Court" and ordered that Rogers's mental health records, including those of Dr. Hark, be released to the State. As Rogers failed to assert his work product privilege claim at that time, it was waived. See *Gen. Motors Corp. v. Conkle,* 226 Ga. App. 34, 46-47 (2) (486 SE2d 180) (1997).

7. Pretermitting whether the trial court erred by applying OCGA § 24-9-67.1 (expert witness testimony in civil proceedings) rather than OCGA § 24-9-67 (expert witness testimony in criminal cases), see Division 4, supra, we find no error in the admission of testimony by the following expert witnesses.

(a) The trial court qualified James Mills, a licensed professional counselor and qualified psychometrist, as an expert in the administration of intelligence tests after hearing testimony regarding his relevant education and experience. Mills testified for the State regarding the Wechsler Adult Intelligence Scales-Third Edition test (WAIS-III) he administered to Rogers in 2000. He testified that he does not independently perform the tests, see OCGA § 43-10A-22; rather, he assists psychologists by performing psychometrics, i.e., the

administration of the tests; the tests are subsequently interpreted by a supervising psychologist. He testified that he recorded Rogers's responses, as he had been trained to do, and turned over the completed test, including his notes and scoring calculations, to his supervisor, licensed psychologist Dr. Don Harris, who reviewed and interpreted Rogers's responses to the test. Mills's testimony was limited to the manner in which the test was administered and he never gave an opinion as to whether or not Rogers is mentally retarded.

We reject Rogers's argument that Dr. Harris had to be physically present in the room with Mills during Rogers's testing session in order to supervise him. Nor has Rogers shown from Mills's unrebutted testimony regarding the manner in which the testing was conducted that the results were unreliable. We find no abuse of the trial court's discretion in qualifying Mills as an expert, *Williams v. State*, 279 Ga. 731, 732 (2) (620 SE2d 816) (2005), or in admitting the sufficiently relevant and reliable evidence regarding the WAIS-III test administered by Mills. See *Daubert v. Merrell Dow Pharmaceuticals*, 509 U. S. 579, 597 (IV) (113 SC 2786, 125 LE2d 469) (1993); *Atkins*, supra, 536 U. S. at 309, n. 5 (WAIS-III is standard instrument for assessing intellectual functioning); *Gen. Elec. Co. v. Joiner*, 522 U. S. 136, 139 (118 SC 512, 139 LE2d 508) (1997) (standard of review for *Daubert* ruling is abuse of discretion).[5] The weight and credibility to give the testimony of Mills was a matter for the jury. *Boswell v. State*, 275 Ga. 689, 691 (2) (572 SE2d 565) (2002).

(b) Dr. Samuel Perri, who was qualified as an expert in the field of forensic psychology, testified that he was experienced in administering WAIS-III tests; that he reviewed the raw data from the WAIS-III administered to Rogers by Mills in 2000 and consulted with Dr. Harris, who had supervised Mills; that he conducted a clinical interview with Rogers; and that he relied on these and other factors to form his professional opinion that Rogers is not mentally retarded. Defense counsel subjected Dr. Perri to a thorough and sifting cross-examination. The trial court did not abuse its discretion by allowing this evidence, and the weight and credibility to give the WAIS-III and Dr. Perri's testimony was a matter for the jury. *Boswell*, supra.[6]

---

[5] Although Rogers contends that a comparison of the answers given by him in the 1977, 1980 and 1995 intelligence tests with those recorded in the test administered by Mills indicates that prosecutorial misconduct occurred, he has failed to set forth any evidence to prove this allegation. See *Richey v. State*, 261 Ga. App. 720, 724 (2) (583 SE2d 539) (2003).

[6] Rogers contends that if Mills was supervised by Dr. Harris, and Dr. Harris interpreted the WAIS-III administered by Mills, the testimony of both Mills and Dr. Perri regarding the test results constituted impermissible testimonial hearsay, as Rogers was denied his right to confront Dr. Harris. See *Crawford v. Washington*, 541 U. S. 36 (124 SC 1354, 158 LE2d 177)

(c) Contrary to Rogers's contention, the record establishes that Dr. Hark formed his opinion regarding Rogers's mental status based on his clinical interview with Rogers and intelligence testing and not upon the personality tests, later determined to be unreliable, that he administered to Rogers in 1977 and 1980. We thus find no abuse of the trial court's discretion by allowing Dr. Hark to testify.

(d) The trial court did not err by denying Rogers's request to admit testimony regarding the contents of affidavits used, in part, by his expert witnesses as the basis for their opinions regarding Rogers's mental status. Applying OCGA § 24-9-67.1 (a) (otherwise inadmissible facts used as basis for expert opinion shall not be disclosed to jury unless court determines their probative value substantially outweighs their prejudicial effect), the trial court first found that the facts contained in the disputed affidavits were otherwise inadmissible hearsay, as they rested on the veracity and competency of persons not in court, OCGA § 24-3-1 (a), and did not come within any statutorily-recognized hearsay exception. See OCGA §§ 24-3-3 through 24-3-17.[7] The trial court then balanced the probative value of these affidavits against their prejudicial effect, noting that the affidavits were originally submitted in Rogers's habeas proceeding. Several of them contained identical language, casting suspicion on their trustworthiness, and some contained conclusory statements and irrelevant and prejudicial information related to Rogers's alleged alcohol and drug use and the crime for which he was convicted. As the little probative information the affidavits contained was cumulative of other evidence and not needed to explain the basis for the experts' opinions, the trial court did not abuse its discretion by refusing to admit the information contained in the affidavits. See *Leonard v. State*, 269 Ga. 867, 870-871 (3) (506 SE2d 853) (1998) (testifying expert not to serve as conduit for opinions of others).

8. Although "a witness may not be impeached based upon a discrepancy relating to a wholly immaterial matter, [cit.]" *Brown v. State*, 260 Ga. 153, 156 (4) (391 SE2d 108) (1990), we find no error in the trial court's admission of impeachment evidence introduced by the State that reflected on the credentials and competency of a defense expert witness, a collateral issue that was indirectly material to the issue in the case. *Carswell v. State*, 263 Ga. App. 833, 834 (2) (589 SE2d 605) (2003). The State's evidence reflected that at the time

---

(2004). Pretermitting whether any statements made by Dr. Harris would be considered testimonial, id. at 68, neither Mills nor Dr. Perri testified as to any such statements.

[7] While Rogers argues that one of the affidavits was admissible under the necessity exception because the affiant was deceased, OCGA § 24-3-1 (b), the trial court did not err by finding that Rogers failed to make the requisite showing for its admission. See *Chapel v. State*, 270 Ga. 151, 155 (510 SE2d 802) (1998).

a defense expert in the field of psychology prepared an affidavit indicating his opinion that Rogers manifested substantially subaverage intellectual functioning before age 18, the expert was on probation following a suspension by the Georgia State Board of Examiners of Psychologists; the State's evidence rebutted the expert's trial testimony regarding the grounds for that suspension and included the Board's decision that the expert's admitted conduct fell below minimum standards of care. This evidence reflected on the expert's credentials and competency, thus challenging his credibility and opinion as to Rogers's intelligence, the issue in this case. Under the circumstances, we conclude that the trial court did not abuse its discretion in admitting the impeachment evidence. See *Kennebrew v. State*, 267 Ga. 400, 403 (3) (480 SE2d 1) (1996) (scope of cross-examination lies in sound discretion of trial court). Compare *King v. State*, 273 Ga. 258, 273 (30) (539 SE2d 783) (2000) (questioning defense expert about *pending* complaint against him was improper impeachment).[8]

9. We find no error in the admission of two letters handwritten by Rogers that were used by the State to cast doubt on his mental retardation claim.

> Proof of handwriting may be resorted to in the absence of direct evidence of execution. In such case, any witness who shall swear that he knows or would recognize the handwriting shall be competent to testify as to his belief. The source of his knowledge shall be a question for investigation and shall go entirely to the credit and weight of his evidence.

OCGA § 24-7-6. A Department of Corrections employee authenticated the letters after testifying that he would recognize Rogers's handwriting because he had observed Rogers sign his name and had received written communications from him. The witness's statement that the handwriting in the body of the letters "appears to be that of Mr. Rogers" did not render his testimony too tentative to support a finding of authenticity. See *Jones v. State*, 165 Ga. App. 260, 261 (1) (299 SE2d 920) (1983).

10. A correctional officer was called by the State to testify regarding Rogers's behavior while incarcerated. Rogers maintains that the trial court erred by allowing irrelevant and prejudicial

---

[8] Assuming, arguendo, that the issue is properly before us, the trial court did not err by allowing the decision of the Board to go out with the jury because the prima facie evidentiary value of the decision was not dependent on the credibility of its drafter and thus it was not subject to the continuing witness rule. *Bryant v. State*, 270 Ga. 266, 270-271 (3) (507 SE2d 451) (1998).

testimony by this witness, namely, that Rogers is not housed in the area of the institution with those inmates the officer had been told are mentally retarded. The officer's testimony was relevant to the issue of Rogers's adaptive skills, however, and was not unduly prejudicial because the officer clarified that he was not diagnosing anyone. We also find no merit in Rogers's argument that this testimony constituted an impermissible lay opinion, see OCGA § 24-9-65, because the officer was never asked for, nor did he ever give, an opinion as to the ultimate issue, i.e., whether Rogers is or is not mentally retarded.

11. "[I]t remains the case that '(t)his State does not recognize the cumulative error rule' [cit.]," *Schofield v. Holsey*, 281 Ga. 809, 812, n. 1 (642 SE2d 56) (2007), and we decline to do so under the circumstances of this appeal.

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 5, 2007.

*Doffermyre, Shields, Canfield & Knowles, Ralph I. Knowles, Jr., Leslie J. Bryan, Kimberly J. Johnson, David S. Hagy, Andrews, Knowles & Princenthal, Craig C. Knowles, Adam P. Princenthal*, for appellant.

*Leigh E. Patterson, District Attorney, Martha P. Jacobs, Assistant District Attorney, Thurbert E. Baker, Attorney General, Sabrina D. Graham, Assistant Attorney General*, for appellee.