**FOURTH DIVISION
DOYLE, P. J.,
MILLER and DILLARD, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**October 17, 2014**

# In the Court of Appeals of Georgia

A14A1375. THE STATE v. MARTINEZ-PALOMINO.

MILLER, Judge.

Following a jury trial, Angel Martinez-Palomino was convicted of kidnapping (OCGA § 16-5-40 (a)), aggravated child molestation (OCGA § 16-6-4 (c)), and child molestation (OCGA § 16-6-4 (a) (1)).[1] The State appeals from the trial court's grant of Martinez-Palomino's motion for new trial, as amended, on the basis that the court erred in allowing a video recording of the child victim's forensic interview to be played during jury deliberations. The State contends that there was no error in

---

[1] The jury also found Martinez-Palomino guilty of aggravated sexual battery and another count of child molestation, and the trial court merged these counts into the aggravated child molestation conviction for sentencing purposes. The trial court also granted a directed verdict as to a third child molestation charge and declared a mistrial as to the offense of enticing a child for indecent purposes.

allowing the jury to view the video because the recording was properly admitted into evidence, the child victim and forensic interviewer testified at trial and were available for cross-examination, and defense counsel agreed to allow the video recording to be played to the jury during its deliberations.[2] For the reasons that follow, we reverse the trial court's grant of Martinez-Palomino's motion for new trial because there was no error in allowing the jury to view the video.

We review the grant of a motion for new trial on special grounds involving a question of law de novo and reverse if the trial court committed legal error. *State v. Clements*, 289 Ga. 640 (1) (715 SE2d 59) (2011) (motion for new trial based on failure to dismiss juror); *O'Neal v. State*, 285 Ga. 361, 363 (677 SE2d 90) (2009) (motion for new trial based on prior denial of motion to sever).

---

[2] At the outset, we address Martinez-Palomino's motion to dismiss the appeal on the grounds that the State failed to include enumerations of error in its brief, as is required by Court of Appeals Rule 22 (a) and Rule 25 (a) (2). Notwithstanding the State's failure to include an enumeration of errors in its brief, this Court is required to consider the appeal because we can discern from the State's brief and the record the errors that the State is asserting on appeal. See OCGA § 5-6-48 (f). Consequently, we deny Martinez-Palomino's motion to dismiss the appeal. See, e.g., *Jackson v. State*, 314 Ga. App. 272, n.1 (724 SE2d 9) (2012); *State v. Madison*, 311 Ga. App. 31, 32 (1) (714 SE2d 714) (2011). We also deny Martinez-Palomino's motion to strike the State's response to his motion to dismiss for failure to include a certificate of service because the State re-filed its response to include such a certificate.

2

Viewed in the light most favorable to the jury's verdict,[3] the evidence shows that Martinez-Palomino and his girlfriend, Raquel Magos, were friends with and lived at the same Gainesville apartment complex as the victim's family. Martinez-Palomino was also a maintenance worker at the apartment complex.

On June 23, 2010, the then 12-year-old victim left her apartment and went for a walk. On her walk, the victim encountered Martinez-Palomino and his co-worker at the apartment complex mailboxes. Martinez-Palomino asked the victim if she wanted a cup of water, and the victim responded affirmatively. The victim then went with Martinez-Palomino and the co-worker to Martinez-Palomino's apartment.

At the apartment, Martinez-Palomino and his co-worker ate their lunch while the victim drank her water. At some point, the co-worker went out the front door to make a phone call. The victim then finished her water, thanked Martinez-Palomino, and turned to leave out the front door. Before the victim was able to reach the front door, however, Martinez-Palomino pulled her back by the waist and threw her onto the couch. Martinez-Palomino started kissing the victim on her mouth and neck and attempted to bite her mouth and ear. Martinez-Palomino then grabbed the victim by

[3] *Jackson*, supra, 314 Ga. App. at 272.

her chest, under her breasts, and forced her down the hall and into the bathroom. The victim testified that she was scared and wanted to leave.

Inside the bathroom, Martinez-Palomino pulled down the victim's shorts and underwear to her knees. Martinez-Palomino then sat the victim down on the sink and pulled down his pants and underwear. Martinez-Palomino inserted his finger into the victim's vagina, causing pain to the victim. Martinez-Palomino then masturbated, and as he ejaculated, someone knocked on the front door. Martinez-Palomino pulled his finger out of the victim's vagina, cleaned himself, and pulled up his pants. When the victim tried to scream, Martinez-Palomino put his hand over the victim's mouth and told her to shut up. Martinez-Palomino then exited the bathroom and went to answer the door. While Martinez-Palomino was at the front door, the victim pulled up her pants, fled out the back door, and returned home. The victim did not immediately tell anyone about the incident.

Later that evening, Magos confronted the victim by the apartment complex pool regarding the victim's sexual assault. Magos told the victim that Martinez-Palomino told her what happened. Magos blamed the victim and threatened her. When Magos left, the victim began to cry, and a neighbor asked her what was wrong. The victim told the neighbor that she was sexually assaulted by Martinez-Palomino.

4

The neighbor convinced the victim to tell her mother about the incident, and the mother reported the incident to the police.

The victim was subsequently taken to the hospital for a sexual assault exam. The examining nurse found several injuries that were consistent with the sexual assault reported by the victim. Two weeks after the incident, Dr. Julie Battle performed a forensic interview of the victim. The videotaped interview was admitted into evidence in its entirety without objection and a portion of the video was played for the jury before it was stopped because of poor audio quality. Dr. Battle then testified that she made a very detailed report of the interview, during which the victim recounted that she was sexually assaulted by Martinez-Palomino.

At trial, while the jury deliberated, it requested to see the video recording of the forensic interview. Martinez-Palomino, who had earlier indicated that he would agree to allow the jury to see the video if requested, did not object to the playing of the video during jury deliberations. The video was then played in open court, and the jury returned to their deliberations after the video concluded.

Following the jury's verdict, Martinez-Palomino filed a motion for new trial asserting, inter alia, that the trial court erred in allowing the jury to view the video of the forensic interview during jury deliberations. The motion for new trial was heard

5

by a different judge who did not preside over the original trial. This new judge granted Martinez-Palomino's motion for new trial on the special ground that the original judge erred by allowing the entire video recording of the child victim's forensic interview to be played during jury deliberations. The State now appeals.

The State contends that the trial court erred in granting Martinez-Palomino's motion for new trial because there was no error in allowing the jury to view the video in its entirety during jury deliberations. We agree.

As a preliminary matter, Martinez-Palomino did not object to the playing of the video during deliberations at the jury's request. In fact, when the trial court stopped playing the recording at trial because of poor audio quality, Martinez-Palomino expressly indicated that he would not object to playing the video at a later time if the jury requested it. "A defendant will not be allowed to induce an asserted error, sit silently hoping for acquittal, and obtain a new trial when that tactic fails." (Footnote omitted.) *Buchanan v. State*, 254 Ga. App. 249, 251 (2) (562 SE2d 216) (2002); see also *Westmoreland v. State*, 192 Ga. App. 173, 176-177 (2) (b) (384 SE2d 249) (1989) ("[a] party cannot claim error where he himself committed or invited the error.") (punctuation omitted).

6

Nevertheless, even assuming Martinez-Palomino did not invite the alleged error, it is well-established that it is permissible for the trial judge, in his discretion, to permit the jury at their instigation to rehear requested parts of the evidence after they have retired and begun deliberations, so long as it is done in open court. *Lopez v. State*, 291 Ga. App. 210, 214 (3) (661 SE2d 618) (2008); *Summage v. State*, 248 Ga. App. 559, 561 (1) (546 SE2d 910) (2001). In this case, the trial court followed "the standard practice, [which] is to bring the jury back into open court to rehear recorded evidence[.]" *Bridges v. State*, 279 Ga. 351, 353 (2) (613 SE2d 621) (2005).

To show that the trial court's actions were an abuse of discretion, Martinez-Palomino was required to show that there were "special circumstances" that would make it unjust to allow the jury to view the video. See *Watkins v. State*, 273 Ga. 307, 310 (3) (540 SE2d 199) (2001); *Martin v. State*, 240 Ga. App. 901, 904 (2) (525 SE2d 728) (1999). He failed to make such a showing. The jury already heard the victim's testimony about the sexual abuse, as well as Dr. Battle's testimony regarding the forensic interview. While Martinez-Palomino argues that the jury heard improper character evidence regarding his proclivity for violence and sexual promiscuousness that it did not initially hear upon the initial playing of the video, the jury was entitled to consider the victim's out-of-court statements as substantive evidence under the

7

Child Hearsay Statute, former OCGA § 24-3-16.[4] See *Lopez*, supra, 291 Ga. App. at 212 (1). This "material evidence [did] not become inadmissible simply because it incidentally place[d] [Martinez-Palomino's] character in issue." (Punctuation and footnote omitted.) *Johnson v. State*, 268 Ga. App. 1, 6 (1) (d) (601 SE2d 392) (2004).

Moreover, trial counsel testified at the motion for new trial hearing that he did not object to the playing of the tape because there were some inconsistencies between the victim's trial testimony and her interview statements and the victim did not appear credible during her interview, factors that trial counsel believed would be beneficial to Martinez-Palomino's defense. Additionally, the victim testified at trial and was subject to extensive cross-examination. Therefore, Martinez-Palomino had a full opportunity to confront the victim and his right to a fair trial was safeguarded. See

---

[4] Former OCGA § 24-3-16 provided that

[a] statement made by a child under the age of 14 years describing any act of sexual contact or physical abuse performed with or on the child by another . . . is admissible in evidence by the testimony of the person or persons to whom made if the child is available to testify in the proceedings and the court finds that the circumstances of the statement provide sufficient indicia of reliability.

There was no challenge, much less evidence presented, that the taped interview lacked an indicia of reliability, and, as indicated above, Martinez-Palomino did not object to its admission.

*Phillips v. State*, 284 Ga. App. 224, 227-228 (1) (b) (644 SE2d 153) (2007) (affirming admission of videotaped interview of child victim into evidence and concluding that defendant's confrontation rights were not violated since the victim testified at trial). Consequently, Martinez-Palomino failed to establish the existence of special circumstances making it unjust for the jury to view the video during deliberations.

Even if the trial court erred in playing the video during deliberations, "error alone is not automatically grounds for a new trial but is subject to scrutiny for harmless error." (Citations and punctuation omitted.) *Tanner v. State*, 243 Ga. App. 640, 643 (2) (533 SE2d 794) (2000). Where there is strong evidence of the defendant's guilt, the admission of improper evidence is harmless error when it is highly unlikely that such evidence contributed to the verdict. *Holden v. State*, 314 Ga. App. 36, 39 (2) (722 SE2d 873) (2012). Here, the victim testified that Martinez-Palomino sexually assaulted her and the physical examination of the victim corroborated her testimony. Therefore, it is highly unlikely that the playing of the videotape that contained bad character evidence contributed to the verdict, and any error that may have occurred in playing the video during deliberations was harmless. Accordingly, the trial judge erred in concluding that Martinez-Palomino was entitled to a new trial.

9

*Judgment reversed. Doyle, P. J., and Dillard, J., concur.*