**SECOND DIVISION**
**MILLER, P. J.,**
**RICKMAN and REESE, JJ.**

**NOTICE:** Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**June 17, 2019**

# In the Court of Appeals of Georgia

A19A0656. ADVANTAGE BEHAVIORAL HEALTH SYSTEMS v. CLEVELAND, AS ADMINISTRATOR OF THE ESTATE OF NICHOLAS CLEVELAND et al.

MILLER, Presiding Judge.

Upon being discharged from a mental health care facility operated by Advantage Behavioral Health Systems ("Advantage"), Nicholas Cleveland committed suicide. Cleveland's parents then filed this negligence and wrongful death action against Advantage, and Advantage filed a motion for a protective order, seeking to have portions of its records on Cleveland declared privileged. The trial court issued an order ruling that only some of the records were privileged and that Advantage lacked standing to assert the mental health privilege to exclude otherwise relevant evidence at trial. For the following reasons, we affirm the trial court's ruling as to

which records were privileged, but we reverse its ruling that Advantage lacked standing to assert the mental health privilege.

The record shows that on March 29, 2016, Cleveland presented at Athens Regional Medical Center with complaints and/or a history of suicidal thoughts, bipolar disorder, severe depression, hallucinations, and alcohol use disorder. Cleveland was examined by Dr. Edward Green, a member of the hospital's emergency department, who completed a Form 1013 ordering that Cleveland be involuntarily committed to Vantage Point, a mental health care facility operated by Advantage.[1] Cleveland received treatment at Vantage Point for two days until his discharge on April 1, 2016, and he committed suicide a few hours later.

In May 2016, Cleveland's parents requested a copy of his medical records from Advantage, and Advantage produced all the records without redaction. In October 2016, Cleveland's parents' attorneys requested a certified copy of the medical records from Advantage, and Advantage again produced the records without redaction. In

---

[1] Advantage is a state community service board which operates programs and provides treatment and support services regarding mental health, developmental disabilities, and addictive diseases. See OCGA § 37-2-6 (a). Vantage Point offers short-term residential services for individuals with psychiatric and substance abuse disorders, and its staff includes a psychiatrist, a nurse practitioner, nurses, clinicians, technicians, and operational support staff.

2

June 2017, Cleveland's parents filed the instant action against Advantage,[2] raising claims of wrongful death and professional negligence based on the allegation that Advantage failed to properly evaluate and treat Cleveland's suicide risk and improperly discharged him given that risk.

Advantage filed a motion for a protective order, seeking rulings that certain disputed portions of the medical records be declared privileged[3] under the mental health privilege provided for in OCGA § 24-5-501 (a) and that further disclosure of any privileged records be precluded. Advantage argued that, in addition to communications between Cleveland and mental health care providers and communications between the providers themselves, records of assessment, diagnosis, and treatment were privileged and therefore inadmissible as evidence at trial.

The plaintiffs opposed the motion, arguing that the disputed portions of the records, which they described as "diagnoses, medications, prescriptions, goals, plan[s] of treatment, orders, observations, assessments and non-mental health

---

[2] The plaintiffs also named as a defendant the Georgia Department of Behavioral Health and Developmental Disabilities, but they subsequently dismissed this defendant without prejudice.

[3] The parties agreed that certain portions of the records were privileged and highlighted these portions in orange. Advantage highlighted the disputed portions of the records and submitted all of the records to the trial court for an *in camera* review.

3

records," were not privileged. The plaintiffs asserted that under OCGA § 24-5-501 (a) only portions of the records reflecting communications between Cleveland and certain mental health care providers were privileged. The plaintiffs also argued that it appeared some of the records were not created by providers subject to the mental health privilege.

The trial court issued an order ruling that (1) only certain portions of the disputed records contained privileged information, and (2) Advantage did not have standing to assert the mental health privilege on behalf of Cleveland to exclude otherwise relevant evidence at trial.[4] Regarding which portions of the records were privileged, the trial court found that the diagnoses, medications, and prescriptions were not privileged. Noting that OCGA § 24-5-501 (a) applies the mental health privilege to communications only, the trial court declined to construe the privilege against disclosure of confidential communications so broadly as to encompass diagnoses and medications prescribed, because doing so would render meaningless OCGA § 37-3-166 (a) (8.1), which provides that the non-privileged portions of

---

[4] The trial court also ruled that the prior release of the records by Advantage did not constitute a waiver of Cleveland's mental health privilege. This ruling is not contested on appeal. The trial court did not address whether the records were created by professionals subject to the mental health privilege.

4

mental health records may be released to the legal representative of a deceased person's estate.

Regarding what it characterized as goals, observation orders/levels, objectives, and plans of treatment, the trial court found that many of these records were not privileged because they could not be characterized as confidential communications. Instead, the trial court found that they were expectations of staff and were not particularized to Cleveland as a result of any communications from him. Among these records were those indicating (1) that the facility had goals that Cleveland not be a danger to himself, take medications as prescribed, and decrease alcohol withdrawal symptoms; (2) that he would be encouraged to attend group therapy; and (3) how often staff members were checking on him. The trial court found that records indicating Cleveland's stress level and his own comments on his stress level were privileged, reasoning that the records came from patient communication.

Regarding what it characterized as observations, the trial court stated that it determined whether the observations were the result of communication with Cleveland. The trial court found that several observations were privileged because they came from communications by Cleveland, arose immediately out of his communications, or were communicative in nature. Such records included indications

of whether Cleveland had suicidal thoughts, how he slept, how much alcohol he drank, and his living and employment situation. The trial court found that other observations were not privileged because they were treatment-directed, were by the treatment providers, or reflected goals of treatment and conclusions of the providers. Such records indicated that Cleveland met with a social worker, had an appropriate appearance, was interacting well with others, watched television, was cooperative, and was in a detoxification program. The trial court found that a record summarizing a discussion between Cleveland and a treatment provider was privileged, and records indicating Cleveland's description of his mood and whether he accepted or declined rehab were also privileged, but a record indicating he attended group therapy was not privileged.

The trial court found without discussion or explanation that the Form 1013 from Dr. Green was not privileged. The trial court found that a record showing that Cleveland had a "service class" of "psychiatric treatment" was not privileged because it simply concerned the fact of treatment. The trial court found that certain assessments reflected Cleveland's answers to questions, and certain treatment goals were clearly developed as a result of communications with him, rendering both privileged. The trial court found that certain plans of care, including records

6

indicating the future discussions a treatment provider planned to have with Cleveland and records consisting of general treatment goals and diagnostic information, were not privileged.

Next, however, the trial court ruled that Advantage did not have standing to assert the mental health privilege on behalf of Cleveland at trial, reasoning that Advantage was a stranger to the privileged communications between Cleveland and his individual mental health care professionals. The trial court stated that it "ma[de] no determination as to the testimony of any individual mental health care professional."[5] We granted Advantage's application for interlocutory appeal, and this appeal followed.

1. First, we address the plaintiffs' argument that Advantage's appeal should be dismissed due to its failure to file an enumeration of errors. We conclude that although Advantage has not filed or included in its appellant's brief an enumeration of errors, it is apparent from the notice of appeal, the record, and the brief what errors Advantage asserts, and we decline to dismiss this appeal.

OCGA § 5-6-48 (f) provides:

---

[5] Because Advantage is a state entity, the plaintiffs could not name the individual mental health care professionals as defendants in this action. See OCGA § 50-21-25.

> Where it is apparent from the notice of appeal, the record, the enumeration of errors, or any combination of the foregoing, what judgment or judgments were appealed from or what errors are sought to be asserted upon appeal, the appeal shall be considered in accordance therewith notwithstanding that the notice of appeal fails to specify definitely the judgment appealed from or that the enumeration of errors fails to enumerate clearly the errors sought to be reviewed. . . .

"The legislature, in enacting OCGA § 5-6-48 (f), has imposed on the appellate courts a statutory duty to discern what errors an appellant is attempting to articulate." (Punctuation omitted.) *Felix v. State*, 271 Ga. 534, 538 (523 SE2d 1) (1999). Also, we are mindful of our Supreme Court's cautioning that the APA is to be *liberally* construed so as to bring about a decision on the merits of every case appealed and to avoid refusal to consider any points raised therein. See id.; OCGA § 5-6-30. See also *Holy Fellowship Church of God in Christ v. First Community Bank of Henry County*, 242 Ga. App. 400, 402 (530 SE2d 24) (2000) ("As a general rule, this state's appellate courts should reach the merits of appeals whenever possible. The policy is to avoid the dismissal of an appeal and to reach the merits of a case whenever it is reasonable to do so.") (citations omitted). Moreover, OCGA § 5-6-48 (b) provides:

> No appeal shall be dismissed or its validity affected for any cause nor shall consideration of any enumerated error be refused, except:

8

(1) For failure to file notice of appeal within the time required as provided in this article or within any extension of time granted hereunder;

(2) Where the decision or judgment is not then appealable; or

(3) Where the questions presented have become moot.

In several recent cases, this Court has considered appeals despite the appellant's failure to file an enumeration of errors where we could discern the errors asserted on appeal. See *State v. Martinez-Palomino*, 329 Ga. App. 304, 305 n. 2 (764 SE2d 886) (2014); *State v. Crapp*, 317 Ga. App. 744, 744-745 (1) (732 SE2d 806) (2012); *Jackson v. State*, 314 Ga. App. 272, 272 n. 1 (724 SE2d 9) (2012); *State v. Madison*, 311 Ga. App. 31, 32 (1) (714 SE2d 714) (2011), overruled on other grounds by *State v. Cohen*, 302 Ga. 616 (807 SE2d 861) (2017); *Blockum v. Fieldale Farms Corp.*, 271 Ga. App. 591, 592 (1) (610 SE2d 82) (2005); *Leslie v. Williams*, 235 Ga. App. 657, 658-659 (1) (510 SE2d 130) (1998), disapproved of on other grounds by *Herr v. Withers*, 237 Ga. App. 420 (515 SE2d 174) (1999). This Court's conclusion in *Martinez-Palomino*, supra, 329 Ga. App. at 305 n. 2, is illustrative of these cases: "Notwithstanding the State's failure to include an enumeration of errors in its brief, this Court is required to consider the appeal because we can discern from the State's

9

brief and the record the errors that the State is asserting on appeal. Consequently, we deny [the appellee's] motion to dismiss the appeal." (citations omitted). Compare *Baker v. State*, 328 Ga. App. 53, 53-54 (761 SE2d 477) (2014) (dismissing appeal for failure to include enumeration of errors where "[n]othing in [the appellant's] brief can be construed as an enumeration of error as to a specific ruling made by the trial court.").

However, in *Complete Wiring Sols., LLC v. Astra Group, Inc.*, 335 Ga. App. 723, 726 (781 SE2d 597) (2016), this Court dismissed an appeal that contained no enumeration of errors, declaring that "in the absence of an enumeration of errors filed in compliance with OCGA § 5-6-40, this Court will not comb through the appellate brief to attempt to discern what errors the appellant seeks to assert on appeal." (citations omitted). There, the appellants' brief contained (1) a section titled "Standard of Review" which stated the standard of appellate review and included a general statement that the judgment was not supported by the evidence and was based on erroneous findings of fact, and (2) a section titled "Statement of Facts" which mixed together asserted facts, claims of error, supporting arguments, and citations to authority. Id. at 724. This Court remarked that nothing in the brief was "sufficient to

constitute an 'enumeration of errors' required to be filed pursuant to OCGA § 5-6-40." Id.

In other cases, this Court and the Supreme Court of Georgia have dismissed appeals based on the absence of an enumeration of errors, but those cases (1) did not address whether the errors asserted on appeal could be discerned from other documents, and/or (2) were decided at a time when appellate court rules required the enumeration to be filed separately from the appellant's brief. See *Lowery v. Smith*, 225 Ga. 814 (171 SE2d 500) (1969); *Riley v. Ga. Dept. of Revenue*, 295 Ga. App. 656 (673 SE2d 49) (2009); *Strom v. London*, 257 Ga. App. 889 (572 SE2d 409) (2002); *Miles v. Emmons*, 234 Ga. App. 487 (507 SE2d 762) (1998).

In a case decided this year, *State v. Freeman*, Ga. App. (825 SE2d 538) (2019), the appellant failed to file or include in its brief an enumeration of errors. While recognizing the "apparent tension" between the cases in which this Court has considered an appeal despite such a failure and the holding in *Complete Wiring Sols., LLC*, this Court concluded it could consider that appeal because "in our examination of the State's notice of appeal and the record, we can clearly ascertain the single allegedly erroneous ruling asserted." Id.

11

In light of the statutory mandates favoring consideration of this appeal, our duty to construe the APA forgivingly, and the apparent tension in the case law, we are not persuaded that the failure to title a section of an appellant's brief as an "Enumeration of Errors" necessarily requires dismissal of the appeal. Here, in the "Argument" section of its brief, Advantage argues that (1) "[t]he trial court erred in concluding that the mental health privilege does not apply to the diagnoses, medications, prescriptions, goals, observations, and treatment plans in Cleveland's mental health records," and (2) "[t]he trial court incorrectly held that Advantage lacks standing to assert the mental health privilege." Thus, we can clearly ascertain the two rulings Advantage asserts were erroneous, and we decline to dismiss this appeal. See *Felix*, supra, 271 Ga. at 539 ("An error of law has as its basis a specific ruling made by the trial court."). However, we emphasize for Advantage and other appellants the importance of following appellate practice rules, including the filing of an enumeration of errors. Such rules foster judicial efficiency and aid appellate courts in reaching the right result, and failure to follow them may result in dismissal of an appeal.

2. Next, we must resolve the parties' dispute over the proper standard of review to apply to the trial court's order. Advantage asserts that the order is subject to de

novo review, while the plaintiffs assert that we should review it for an abuse of discretion. As shown in Division 3 below, whether Advantage has standing to assert the mental health privilege in the circumstances presented does not involve any factual determinations and only presents a question of law. As "the standard of review for a question of law on appeal is de novo," *Ga. Transmission Corp. v. Worley*, 312 Ga. App. 855, 856 (720 SE2d 305) (2011) (citation and punctuation omitted), we will review the trial court's standing ruling de novo.

We will, however, review the trial court's ultimate rulings regarding whether certain records were privileged for an abuse of discretion, while reviewing any factual determinations underlying those rulings for clear error. In *Cooksey v. Landry*, 295 Ga. 430 (761 SE2d 61) (2014), upon a mental health patient's death, his parents sought an injunction directing his psychiatrist to turn over all of the patient's records. Without reviewing the records and without making any distinction between privileged and non-privileged information, the trial court concluded that equity supported the parents' position and issued the injunction. Id. at 430-431. On appeal, the Supreme Court of Georgia stated that "[t]he issue to be decided by the trial court in this appeal was a legal one, whether the psychiatric records sought by appellees constitute privileged matters protected from disclosure under Georgia law. Accordingly, we

13

review the trial court's legal determinations de novo." (Citation omitted.) Id. at 431 (1).

This Court and the Supreme Court of Georgia generally review the grant or denial of a motion for protective order using the abuse of discretion standard of review. *Alexander Properties Group Inc. v. Doe*, 280 Ga. 306, 307 (1) (626 SE2d 497) (2006); *Mincey v. Ga. Dept. of Comm. Affairs*, 308 Ga. App. 740, 744 (1) (708 SE2d 644) (2011). The appellate courts also generally review for an abuse of discretion a "decision as to discovery matters, including the application of a privilege." *Gwinnett Hosp. Sys., Inc. v. Hoover*, 337 Ga. App. 87, 88 (785 SE2d 918) (2016); *Brown v. Howard*, 334 Ga. App. 182, 183 (778 SE2d 810) (2015). See *Wiles v. Wiles*, 264 Ga. 594, 598 (2) (448 SE2d 681) (1994) (applying abuse of discretion standard to review trial court's ruling that patient was entitled to the benefit of the mental health privilege).

Here, in contrast to *Cooksey*, the trial court carefully reviewed the disputed records and based most of its privilege rulings on specific factual determinations regarding whether the records arose from patient communications. Accordingly, we determine that the trial court's ultimate privilege rulings should be reviewed for an abuse of discretion, and we will accept the trial court's specific factual findings

14

underlying those rulings unless they are clearly erroneous. "[I]n various contexts, we accept factual findings unless they are clearly erroneous and review a trial court's ultimate decision on the particular issue for abuse of discretion." (Citation omitted.) *Reed v. State*, 291 Ga. 10, 13 (3) (727 SE2d 112) (2012). See *Graves v. State*, 298 Ga. 551, 554 (2) (783 SE2d 891) (2016) (in reviewing the trial court's admission of similar transaction evidence, this Court accepts the trial court's factual findings unless clearly erroneous and reviews for abuse of discretion its ultimate decision to admit the evidence); *Brown*, supra, 334 Ga. App. at 183 ("Further, we also may review the documents at issue to determine whether the trial court correctly applied the [mental health] privilege.") (citation omitted).

3. Turning to the merits, we agree with Advantage that the trial court erred in ruling it lacks standing to assert the mental health privilege.

"Georgia law provides several privileges related to mental health, which, collectively, are referred to as the mental health privilege." *Brown*, supra, 334 Ga. App. at 185 (1); see *State v. Herendeen*, 279 Ga. 323, 325 (613 SE2d 647) (2005). Specifically, OCGA § 24-5-501 (a) provides:

There are certain admissions and communications excluded from evidence on grounds of public policy, including, but not limited to, the following:

. . .

(5) Communications between psychiatrist and patient;

(6) Communications between licensed psychologist and patient as provided in Code Section 43-39-16;

(7) Communications between a licensed clinical social worker, clinical nurse specialist in psychiatric/mental health, licensed marriage and family therapist, or licensed professional counselor and patient; [and]

(8) Communications between or among any psychiatrist, psychologist, licensed clinical social worker, clinical nurse specialist in psychiatric/mental health, licensed marriage and family therapist, and licensed professional counselor who are rendering psychotherapy or have rendered psychotherapy to a patient, regarding that patient's communications which are otherwise privileged by paragraph (5), (6), or (7) of this subsection . . . .

OCGA § 43-39-16 provides that "[t]he confidential relations and communications between a licensed psychologist and client are placed upon the same basis as those

16

provided by law between attorney and client; and nothing in this chapter shall be construed to require any such privileged communication to be disclosed."

"The primary purpose of the [mental health] privilege is to encourage the patient to talk freely without fear of disclosure and embarrassment, thus enabling the psychiatrist to render effective treatment of the patient's emotional or mental disorders." (Citation and punctuation omitted.) *Cooksey*, supra, 295 Ga. at 432 (2). The privilege "remains inviolate even though the patient's care and treatment or the nature or extent of the patient's injuries are put in issue in a civil proceeding." Id. at 432-433 (2). See also *Mincey*, supra, 308 Ga. App. at 745 (1); OCGA § 24-12-1 (a). "Moreover, and of primary importance in this case, is the fact that unlike other recognized privileges, the [mental health] privilege survives the death of the patient." (Citation and footnote omitted.) *Cooksey*, supra, 295 Ga. at 433 (2).

Here, we conclude that the trial court erred in ruling that Advantage does not have standing to seek to exclude otherwise relevant evidence by asserting the mental health privilege on behalf of Cleveland at trial. In the absence of a waiver by the patient,[6] privileged material is neither discoverable nor admissible at trial, and nothing precludes Advantage from asserting the privilege.

---

[6] There is no contention that Cleveland waived the privilege.

17

In *Cooksey*, supra, 295 Ga. at 434-435 (2), the Supreme Court of Georgia held that the trial court erred in directing the psychiatrist to turn over all of the patient's records. The Supreme Court reasoned that the privilege survives the death of the patient, noting that "it is the promise of confidentiality that encourages patients to openly discuss their emotional and mental health issues. If psychiatrist-patient communications were protected only until the patient's death, patients might not feel as free to make the disclosures necessary for effective treatment, thereby impeding the primary goal of the privilege." (Citation omitted.) Id. at 433 n. 6 (2). Significantly, the Supreme Court explained that "the privilege is held *only* by the patient and waiver of the privilege must be expressly made by the patient, or, in the absence of an express waiver by the patient, one seeking the disclosure of privileged mental-health records must establish a waiver by the patient's decisive unequivocal conduct reasonably inferring the intent to waive." (Citation, punctuation, and footnote omitted; emphasis supplied.) Id. at 433 (2). See also *Willett v. State*, 223 Ga. App. 866, 868 (1) (479 SE2d 132) (1996) ("The right to assert the privilege belongs to the patient.") (citation omitted).

The Supreme Court further explained in *Cooksey*, supra, 295 Ga. at 433 (2), that

18

[c]onsistent with the protections afforded psychiatrist-patient communications even after a patient's death, our legislature has determined that a deceased patient's representative cannot waive the psychiatrist-patient privilege. See OCGA § 31-33-4 (providing that statutes authorizing the release of health records to a deceased patient's representative "shall not apply to psychiatric, psychological, or other mental health records of a patient"); OCGA § 37-3-166 (a) (8.1) (authorizing mental health facilities to release a deceased patient's mental health records "to the legal representative of [the] deceased patient's estate, except for matters privileged under the laws of this state.").

The Supreme Court framed the privilege as a nearly absolute one, emphasizing that "the *patient* is the holder of the psychiatrist-patient privilege and absent waiver *by the patient*, privileged communications may not be disclosed." (Emphasis in original.) Id. at 434 n. 7 (2). See also id. at 434 (2) ("[U]nder Georgia law confidential communications between a psychiatrist and patient may not be disclosed absent waiver by the patient . . . ."). Therefore, *Cooksey* certainly suggests that if a patient does not waive the mental health privilege, upon the patient's death his or her privileged mental health records are absolutely privileged and are therefore neither

19

discoverable nor admissible at trial, regardless of who raises the issue of the privilege.[7]

Other cases support the concept that the mental health privilege applies in the absence of a waiver by the patient and regardless of who raises the issue, whether it be an individual mental health professional, a mental health care facility, or another entity. In *Annandale at Suwanee, Inc. v. Weatherly*, 194 Ga. App. 803 (392 SE2d 27) (1990), the plaintiff filed suit against a mental health facility on behalf of the estate of a patient who died in a fire set by another patient. Citing the mental health privilege, the facility objected to the plaintiff's request that the facility produce all reports referring to the other patient, but the trial court ordered the facility to produce

---

[7] Prior to *Cooksey*, in *Sims v. State*, 251 Ga. 877, 880 (5) (311 SE2d 161) (1984), the defendant in a murder case sought to have a psychiatrist testify to statements made by the victim during joint counseling sessions with the defendant and the victim. The Supreme Court of Georgia held that the trial court did not err in refusing to allow the testimony, as the victim's communications to the psychiatrist were entitled to protection and the privilege survived the victim's death. Id. at 881 (5). The Supreme Court noted that the issue of the State's standing to assert the privilege was not raised, but there were competing lines of authority on the issue: some holding that only the personal representative of the communicant or the psychiatrist may assert the privilege after the communicant's death, and others holding that the trial court has discretion to invoke the privilege on its own motion in the communicant's absence. Id. at 881 n. 7 (5). *Cooksey* appears to have largely resolved this issue, such that in the absence of a waiver by the patient, material covered by the mental health privilege remains nearly absolutely privileged after a patient's death.

the records. Id. This Court held that to the extent the records involved communications between the patient and a psychiatrist or psychologist, the records were privileged and "not to be produced." Id. at 804. See also *Herendeen*, supra, 279 Ga. at 327 (in the absence of a waiver of the mental health privilege by the patients, any information in the possession of a mental health facility which had its origins in communications from the patients to covered mental health providers was privileged and not subject to disclosure pursuant to a subpoena).

In *Freeman v. State*, 196 Ga. App. 343, 343-344 (1) (396 SE2d 69) (1990), the defendant called a psychiatrist to testify regarding his conclusion that the victim, his patient, had psychiatric disorders. The State objected on the basis of the mental health privilege, and it was established that the victim had not waived the privilege. This Court concluded: "This privilege is absolute. The requisite confidential relationship existed. Without a waiver, there was no basis for the admission of testimony about communications between psychiatrist and patient." (Citations omitted.) Id. at 343-344 (1). See also *Trammel v. Bradberry*, 256 Ga. App. 412, 423 (6) (568 SE2d 715) (2002) (physical precedent only) ("As to civil commitment or treatment by psychiatrist, psychologist, or counselor, the absolute privilege of [former OCGA § 24-9-21, current OCGA § 24-5-501] applies except when waived by the patient

21

alone.") (citation omitted); *Scroggins v. State*, 237 Ga. App. 122, 124 (4) (514 SE2d 252) (1999) ("The [mental health] privilege is absolute, and unless it is waived, the information sought is not discoverable.") (citation omitted); Milich, Ga. Rules of Evidence 2018-2019, § 23:4 ("The client is the holder of the privilege and thus only the client may assert or waive it.").

By way of contrast, in *Johnson v. State*, 254 Ga. 591, 595 (2) (331 SE2d 578) (1985), the Supreme Court of Georgia held that the defendant lacked standing to object to the testimony of his co-defendant's cellmate regarding psychiatric reports on the cellmate's mental condition. The Supreme Court explained that the mental health privilege belonged to the cellmate, who gave the testimony without claiming protection of the privilege. Id. at 595 n. 2 (2). Therefore, the cellmate in *Johnson* may have implicitly waived his privilege by testifying, while in this case Cleveland is deceased and there is no contention he waived his privilege.

Moreover, a rule that a facility in possession of privileged information may not assert the mental health privilege — whether to prevent disclosure of such information during discovery or to prevent admission of such information at trial — would contravene the privilege's purpose of encouraging free communications between patients and mental health providers. See *Herendeen*, supra, 279 Ga. at 325

22

("As far as the individual patient's private interest is concerned, confidentiality is a *sine qua non* for successful psychotherapeutic treatment since a psychotherapist's ability to help a patient is completely dependent upon the patient's willingness and ability to talk freely, and assurances of confidentiality and privilege foster the psychotherapist's ability to function.") (citation omitted); *Mincey*, supra, 308 Ga. App. at 745 (1) ("[I]n order to encourage a patient to speak freely to his or her mental-health professional, we declare such communications 'absolutely privileged,' and protect them from discovery in the absence of an affirmative waiver by the patient.") (citations omitted).

We recognize that the mental health privilege and the attorney-client privilege are largely coextensive, see OCGA § 43-39-16, and that the rule providing that communications between attorney and client are privileged cannot be invoked for the benefit of persons who are strangers to the attorney-client relationship. See *White v. Regions Bank*, 275 Ga. 38, 41 (2) (c) (561 SE2d 806) (2002); *Schaffer v. Fox*, 303 Ga. App. 584, 587 (2) (693 SE2d 852) (2010). However, this does not alter our conclusion here for two reasons. First, we are bound by *Cooksey* and other prior cases describing the mental health privilege as nearly absolute and applicable in the absence of waiver by the patient. Second, we reject the concept that a mental health

facility, which employs individual mental health providers and is the custodian of the patient's records, is a "stranger" to the provider-patient relationship. Indeed, a hospital or mental health facility can be held liable for the improper disclosure of privileged mental health records. See *Kennestone Hosp. v. Hopson*, 273 Ga. 145 (538 SE2d 742) (2000); *Sletto v. Hosp. Auth.*, 239 Ga. App. 203, 206 (1) (521 SE2d 199) (1999).

We also acknowledge that "it is no small matter for a court, given its focus on the pursuit of truth and justice, to hold that potentially relevant evidence is shielded from [admission at trial]," *Cooksey*, supra, 295 Ga. at 435 (3), especially in light of the fact that Advantage has previously disclosed the records. "Our legislature, however, has determined that the public policies supporting the creation of a mental health privilege necessitated enactment of a nearly absolute privilege, one without exception if the patient is deceased or the nature of the patient's mental condition is put at issue." Id. at 435-436 (3). Accordingly, we conclude that the trial court erred in ruling that Advantage does not have standing to exclude otherwise relevant evidence by asserting the mental health privilege on behalf of Cleveland at trial.

4. In arguing that "[t]he trial court erred in concluding that the mental health privilege does not apply to the diagnoses, medications, prescriptions, goals,

24

observations, and treatment plans in Cleveland's mental health records," Advantage challenges the trial court's privilege rulings *in toto* without analyzing or challenging any specific rulings. Advantage broadly asserts that the mental health privilege applies not just to actual communications between patients and mental health professionals, but also to information with origins in such communications. It argues that diagnoses, medications, prescriptions, goals, observations, and treatment plans necessarily originate from communications, as the only way mental health professionals can diagnose patients, determine what medications to prescribe, collect observations, or devise treatment plans is by communicating with them, and the mental health privilege must be applied here in order to advance the privilege's purpose.

Because Advantage only provides argument challenging the trial court's privilege rulings as a whole and at least some of these rulings were not erroneous, this enumeration of error fails. The trial court did not rule that the "diagnoses, medications, prescriptions, goals, observations, and treatment plans" in the records were categorically not privileged. Instead, at least as to the goals, observations, and treatment plans, the trial court analyzed the records and ruled that some records were

privileged and some were not, depending on whether they arose from patient communications.

It is well-settled that the mental health privilege applies to "communications" and "admissions" between patients and covered mental health providers, as well as communications between such providers regarding patient communications. See OCGA § 24-5-501 (a); *Cooksey*, supra, 295 Ga. at 433 n. 5 (2); *Dynin v. Hall*, 207 Ga. App. 337, 338 (1) (428 SE2d 89) (1993); *Mrozinski v. Pogue*, 205 Ga. App. 731, 734 (2) (423 SE2d 405) (1992). The privilege also applies to "any information that the [mental health] professional holds which has its origins in" communications between the patient and the professional. See *Mincey*, supra, 308 Ga. App. at 746 (1). See also *Cooksey*, supra, 295 Ga. at 432 n. 4 (2) ("The protections afforded these communications extend to communications between or among a psychiatrist and other mental health professionals listed in OCGA § 24-5-501 (a) (8) and include a psychiatrist's conclusions that originated in communications between the patient and the psychiatrist.") (citation omitted); *Herendeen*, supra, 279 Ga. at 327 ("Any information in the possession of [the professionals or facility] which had its origins in communications from the patients to the medical health providers is privileged.") (citation omitted); *Mrozinski*, supra, 205 Ga. App. at 734 (2) ("Information which

*originated* as communications from the patient may be privileged.") (citation and punctuation omitted; emphasis in original). The privilege does not apply to the fact of treatment or the dates on which treatment was rendered. *Cooksey*, supra, 295 Ga. at 433 n. 5 (2); *Johnson*, supra, 254 Ga. at 597 (7); *Mincey*, supra, 308 Ga. App. at 746 (1).

Here, the trial court did not abuse its discretion in ruling that at least some of the disputed records were not privileged, based on its factual findings that these records did not have their origins in patient-mental health professional communications. One disputed record indicates that Cleveland was receiving psychiatric treatment, and the mental health privilege does not apply to the fact of treatment. Other disputed records simply show that Cleveland participated in certain activities, such as meeting with a social worker, attending group therapy, and watching television, or show that his appearance was appropriate. The trial court did not clearly err in finding that these records did not have their origins in patient communications.

While it is arguable that some portions of the records which the trial court deemed non-privileged actually had their origins in patient communications,[8] we do not resolve that issue in this appeal because it is not presented to us. Advantage broadly challenges the trial court's privilege rulings as a whole, and at least some of these rulings were not erroneous. Advantage, as the appellant, bears the burden to show error affirmatively by argument and by citation to the record. See Court of Appeals Rule 25 (c) (2). As Advantage's challenge to the entirety of the trial court's privilege rulings fails, we will not manufacture or analyze more specific enumerations of error or arguments not asserted by Advantage.[9] See *Hess Oil & Chemical Corp. v.*

---

[8] For instance, while the trial court ruled that the diagnoses were not privileged, in *Freeman*, supra, 196 Ga. App. at 343-344 (1), this Court determined that the mental health privilege applied to a psychiatrist's testimony that as a result of his evaluations of the victim, his former patient, he found the victim to be suffering from major psychiatric disorders. We note that where actual communications are not at issue and a trial court must determine whether disputed material had its origins in patient communications, application of the privilege can be a fact-intensive inquiry, although such inquiry should be guided by precedent such as *Freeman*.

[9] We also note that, as the plaintiffs point out, it is not apparent from the record on appeal whether some of the disputed records involve communications between Cleveland and covered mental health providers or agents thereof under OCGA § 24-5-501 (a). "In order to invoke the statutory mental health privilege in Georgia, the requisite relationship of mental health provider and patient must have existed." (Punctuation omitted.) *Herendeen*, supra, 279 Ga. at 326. Under the clear terms of OCGA § 24-5-501 (a), the privilege only applies to communications involving psychiatrists, psychologists, licensed clinical social workers, clinical nurse specialists

*Nash*, 226 Ga. 706, 708 (177 SE2d 70) (1970) ("The duty of the appellate court is to correct errors alleged to have been made in the trial court and not to manufacture them.").

In conclusion, we reverse the trial court's ruling that Advantage lacks standing to exclude privileged material at trial by asserting the mental health privilege. However, we affirm the trial court's rulings regarding whether disputed portions of Advantage's records were privileged.

*Judgment affirmed in part and reversed in part. Rickman and Reese, JJ., concur.*

---

in psychiatric/mental health, licensed marriage and family therapists, and licensed professional counselors. See OCGA § 24-5-501 (a) (5) - (8). The privilege also applies to agents of covered mental health providers. See *Hoover*, supra, 337 Ga. App. at 88-89 (1); *Plunkett v. Ginsburg*, 217 Ga. App. 20, 21 (456 SE2d 595) (1995). See also *Myers v. State*, 251 Ga. 883, 884 (2) (310 SE2d 504) (1984) ("Where the nurse is an agent of the hospital rather than the communicant's doctor, however, the doctor's privilege will not protect communications made to the nurse.") (citation omitted).